02/24/2005

**Response to Respondents Reply:**

Appellant is cognizant of the fact a 6320/6330 hearing is an administrative process. The 1998 Restructure and Reform Act was/is designed under the guise of protecting the "***taxpayers***" "rights". Those who are not "taxpayers" or who believe they are not "liable" for a particular tax are precluded from making such an argument. The regulations however tell us that judicial review is dependant upon a timely request for a CDP hearing and the resulting appeal of the agencies determination. (see Sect. (6330(d)(1) and CFR Sect.6320-1(b)(2)Q+AB3) . The entire process is predicated upon the fact that every individual who requests a hearing is presumed to be a "taxpayer". A notice of deficiency is a first opportunity to petition the "Tax Court". The tax court adjudicates the amount of the tax. Failure to petition the tax court creates a Notice of Federal Tax Lien , the Notice of Federal Tax Lien under 6320(a)(1) given to the person described in Sect. 6321(ie) the taxpayer". The NFTL allows the right to "request" a timely CDP hearing. The Notice of Determination is a directive to the "Tax Court" for adjudication of the amount and to the District court for penalty actions. This circuitous process never allows an individual to argue the issue of "liability" at law. The statute at 6330(C)(2)(B) allows only that having never received a "statutory" notice of deficiency one may discuss the existence or amount of the underlying tax liability. Of course if one did not receive a "statutory" notice of deficiency the "existence" of that document would be in question. If the notice of deficiency materializes at the hearing the amount of the underlying tax liability would be evident. This is not relative to an argument as to "who is liable" as the respondent himself has noted where he said:  *"Of course, Sect 6330 authorized an Administrative Appeal of an Internal Revenue Service Administrative determination made under 6320 not a trial"*. So we can agree the CDP process is administrative and for "Collection" due process only. The courts Jurisdiction is pre determined before the "Notice of Determination" is ever issued. If Plaintiff is dreaming this whole thing up keep in mind that (and the record shows) the plaintiff was warned of sanctions if he petitioned the "wrong"court. (ie) Other than the court he was told to petition. (see cases provided in plaintiffs original petition)

The issue as to the "statutory" nature (authority in law) 6211/6212 of the deficiency is never addressed except by denial – but then the "impartial" agent cannot determine issues of law – only administrative "collection".

The issue of the "appropriateness of the notice of filing of Federal Tax Lien, though raised at the hearing is also summarily denied and so every attempt to question "liability" is squashed while the administrative process "creates" the liability. This circle jerk is a complete denial of "Due Process of Law" as the law is never addressed. The courts are ***pre-selected*** and "collection" is ***enforced therein***. One can't get much closer to conspiracy.

The laws and regulations relative to this plaintiff's remuneration are the subject of a court of proper jurisdiction. The court must remain impartial, the tax court cannot accomplish



this. Many attempts made by this plaintiff questioning that courts jurisdiction relative to the laws affecting my remuneration were left unanswered. Proof is on the record. No procedure was left available to this plaintiff to seek proper judicial relief as 6320/6330 CDP procedures are designed to prevent that possibility. Relief can only be sought by a Jury of my Piers and the rules support that fact.

Plaintiff does not find a conflict of inters as to the "source" of the district court judges salary. Compensation with regard to the judiciary has always been paid by the U.S. Government. (Article 3 Sect 1) the respondent in this case is in conflict as well. (1862 Sect 89, 31.3401(Q)-(2)(4)(b)(1), 3401(C), 31.3401(C)-1, statutory construction 1918-1986.) Conflict resides in the fact that the judge is taxed by the executive, the very agency acting against the plaintiff. Impartiality is a legal impossibility. Miles v. Graham and Evans v. Gore prove that the judges are cognizant of their independence as guaranteed under Art. 3. Having acquiesced to the authority of the legislature after June 6, 1932 - How could any jurist honestly determine whether or not a citizen could be exempt from direct taxes under Art. 1, Sect 2, Cl 3, and Art 1, Sect 9, Cl 4 of the constitution (except when apportioned). To do so would be to bite the hand that feeds him.

Once one becomes cognizant of the application of the tax laws he or she is no longer bound by an administrative straight jacket.

 I therefore refuse to wave any of my Constitutional rights under Brady v. U.S. and demand my right to trial by jury. This demand is based upon the fact that statutory history proves beyond a question of a doubt that a conflict of interest is evident with regard to Judge George A. O'toole with regard to this case this case.

Bruce  P. Plasse (Pro Se)
P.O. Box 265
Oxford, Ma. 01540-0265

472        THIRTY–SEVENTH CONGRESS. Sess. II. Ch. 119. 1862.

Salaries, &c.
Passports.

## SALARIES AND PAY OF OFFICERS AND PERSONS IN THE SERVICE OF THE UNITED STATES, AND PASSPORTS.

Salaries.

Sec. 86. *And be it further enacted*, That on and after the first day of August, eighteen hundred and sixty-two, there shall be levied, collected, and paid on all salaries of officers, or payments to persons in the civil, military, naval, or other employment or service of the United States, including senators and representatives and delegates in Congress, when exceeding the rate of six hundred dollars per annum, a duty of three per centum on the excess above the said six hundred dollars ; and it shall be the duty of all paymasters, and all disbursing officers, under the government of the United States, or in the employ thereof, when making any payments to officers and persons as aforesaid, or upon settling and adjusting the accounts of such officers and persons, to deduct and withhold the aforesaid duty of three per centum, and shall, at the same time, make a certificate stating the name of the officer or person from whom such deduction was made, and the amount thereof, which shall be transmitted to the office of the Commissioner of Internal Revenue, and entered as part of the internal duties ; and the pay-roll, receipts, or account of officers or persons paying such duty, as aforesaid, shall be made to exhibit the fact of such payment.

Passports.

Sec. 87. *And be it further enacted*, That for every passport issued from the office of the Secretary of State, after the thirtieth day of June, eighteen hundred and sixty-two, there shall be paid the sum of three dollars ; which amount may be paid to any collector appointed under this act, and his receipt therefor shall be forwarded with the application for such passport to the office of the Secretary of State, or any agent appointed by him. And the collectors shall account for all moneys received for passports in the manner hereinbefore provided, and a like amount shall be paid for every passport issued by any minister or consul of the United States, who shall account therefor to the treasury.

Advertisements.

## ADVERTISEMENTS.

Duty.

Sec. 88. *And be it further enacted*, That on and after the first day of August, eighteen hundred and sixty-two, there shall be levied, collected, and paid by any person or persons, firm, or company, publishing any newspaper, magazine, review, or other literary, scientific, or news publication, issued periodically, on the gross receipts for all advertisements, or all matters for the insertion of which in said newspaper or other publication, as aforesaid, or in extras, supplements, sheets, or fly-leaves accompanying the same, pay is required or received, a duty of three per centum ; and the person or persons, firm or company, owning, possessing, or having the care or management of any and every such newspaper or other pub-

*1918-1919*

— *STATUTE AT LARGE* —

SIXTY-FIFTH CONGRESS. Sess. III. Ch. 18. 1919.          **1065**

INCOME TAX.

employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

If a taxpayer changes his accounting period from fiscal year to calendar year, from calendar year to fiscal year, or from one fiscal year to another, the net income shall, with the approval of the Commissioner, be computed on the basis of such new accounting period, subject to the provisions of section 226.

*If taxpayer change accounting period.*

### GROSS INCOME DEFINED.

*Gross income.*

Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

*Sources included. Post, p. 1077.*

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.  The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; but

*From personal salaries, etc. Federal officers, etc., included.*

*Professions, trades, business, etc.*

*Interest, rent, dividends, etc.*

*Included in taxable year received.*

(b) Does not include the following items, which shall be exempt from taxation under this title:

*Exclusions.*

(1) The proceeds of life insurance policies paid upon the death of the insured to individual beneficiaries or to the estate of the insured;

*From life insurance policies.*

(2) The amount received by the insured as a return of premium or premiums paid by him under life insurance, endowment, or annuity contracts, either during the term or at the maturity of the term mentioned in the contract or upon surrender of the contract;

*Returns from insurance contracts.*

(3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income);

*Gifts, bequests, etc.*

(4) Interest upon (a) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (b) securities issued under the provisions of the Federal Farm Loan Act of July 17, 1916; or (c) the obligations of the United States or its possessions; or (d) bonds issued by the War Finance Corporation: *Provided*, That every person owning any of the obligations, securities or bonds enumerated in clauses (a), (b), (c) and (d) shall, in the return required by this title, submit a statement showing the number and amount of such obligations, securities and bonds owned by him and the income received therefrom, in such form and with such information as the Commissioner may require. In the case of obligations of the United States issued after September 1, 1917, and in the case of bonds issued by the War Finance

*Interest on State, etc., debts. Farm loan bonds. Vol. 39, p. 375.*
*Government or War Finance Corporation bonds. Proviso. Returns required.*

*Limitation on Federal securities issued after September 1, 1917, etc.*



0 upon net incomes of $70,000; and upon net incomes in .s of $70,000 and not in excess of $74,000, 26 per centum .ddition of such excess.

$8,820 upon net incomes of $74,000; and upon net incomes in excess of $74,000 and not in excess of $76,000, 27 per centum in addition of such excess.

$9,360 upon net incomes of $76,000; and upon net incomes in excess of $76,000 and not in excess of $80,000, 28 per centum in addition of such excess.

$10,480 upon net incomes of $80,000; and upon net incomes in excess of $80,000 and not in excess of $82,000, 29 per centum in addition of such excess.

$11,060 upon net incomes of $82,000; and upon net incomes in excess of $82,000 and not in excess of $84,000, 30 per centum in addition of such excess.

$11,660 upon net incomes of $84,000; and upon net incomes in excess of $84,000 and not in excess of $88,000, 31 per centum in addition of such excess.

$12,900 upon net incomes of $88,000; and upon net incomes in excess of $88,000 and not in excess of $90,000, 32 per centum in addition of such excess.

$13,540 upon net incomes of $90,000; and upon net incomes in excess of $90,000 and not in excess of $92,000, 33 per centum in addition of such excess.

$14,200 upon net incomes of $92,000; and upon net incomes in excess of $92,000 and not in excess of $94,000, 34 per centum in addition of such excess.

$14,880 upon net incomes of $94,000; and upon net incomes in excess of $94,000 and not in excess of $96,000, 35 per centum in addition of such excess.

$15,580 upon net incomes of $96,000; and upon net incomes in excess of $96,000 and not in excess of $100,000, 36 per centum in addition of such excess.

$17,020 upon net incomes of $100,000; and upon net incomes in excess of $100,000 and not in excess of $200,000, 37 per centum in addition of such excess.

$54,020 upon net incomes of $200,000; and upon net incomes in excess of $200,000 and not in excess of $300,000, 38 per centum in addition of such excess.

$92,020 upon net incomes of $300,000; and upon net incomes in excess of $300,000 and not in excess of $500,000, 39 per centum in addition of such excess.

$170,020 upon net incomes of $500,000; and upon net incomes in excess of $500,000, in addition 40 per centum of such excess.

(b) In the case of a bona fide sale of mines, oil or gas wells, or any interest therein, where the principal value of the property has been demonstrated by prospecting or exploration and discovery work done by the taxpayer, the portion of the tax imposed by this section attributable to such sale shall not exceed 16 per centum of the selling price of such property or interest. (June 2, 1924, 4.01 p. m., c. 234, § 211, 43 Stat. 265.)

953. Net income; computation; change of accounting period.—
(a) In the case of an individual the term "net income" means the gross income as defined in section 954 of this title, less the deductions allowed by sections 937 and 955.

(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner of Internal Revenue does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined

in section 931 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

(c) If a taxpayer changes his accounting period from fiscal year to calendar year, from calendar year to fiscal year, or from one fiscal year to another, the net income shall, with the approval of the said commissioner, be computed on the basis of such new accounting period, subject to the provisions of section 908. (June 2, 1924, 4.01 p. m., c. 234, § 212, 43 Stat. 267.)

954. Gross income; what included; what not included.—For the purposes of this chapter, except as otherwise provided in section 985.

(a) The term "gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 953, any such amounts are to be properly accounted for as of a different period.

(b) The term "gross income" does not include the following items, which shall be exempt from taxation under this chapter:

(1) The proceeds of life insurance policies paid upon the death of the insured;

(2) The amount received by the insured as a return of premium or premiums paid by him under life insurance, endowment, or annuity contracts, either during the term or at the maturity of the term mentioned in the contract or upon surrender of the contract;

(3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income);

(4) Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (B) securities issued under the provisions of chapters 7 and 8 of Title 12 (the Federal Farm Loan Act); or (C) the obligations of the United States or its possessions. Every person owning any of the obligations or securities enumerated in clause (A), (B), or (C) shall, in the return required by this chapter, submit a statement showing the number and amount of such obligations and securities owned by him and the income received therefrom, in such form and with such information as the Commissioner of Internal Revenue may require. In the case of obligations of the United States issued after September 1, 1917 (other than postal savings certificates of deposit), the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the issue thereof as amended and supplemented, and shall be excluded from gross income only if and to the extent it is wholly exempt to the taxpayer from income taxes;

(5) The income of foreign governments received from investments in the United States in stocks, bonds, or other domestic securities, owned by such foreign governments, or from interest on deposits in banks in the United States of moneys



*STATUTES @ LARGE 1931-32*

178          72d CONGRESS.  SESS. I.  CH. 209.  JUNE 6, 1932.

Part II—Computation of Net Income

INCOME TAX
Computation of net
income.

**SEC. 21. NET INCOME.**

Net income.
Meaning of.

"Net income" means the gross income computed under section 22, less the deductions allowed by section 23.

Gross income.

**SEC. 22. GROSS INCOME.**

General definition.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.  In the case of Presidents of the United States and judges of courts of the United States taking office after the date of the enactment of this Act, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly.

Compensation of
Presidents, judges.

Items exempt from
taxation.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

Life insurance.

(1) LIFE INSURANCE.—Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or in installments (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

Amounts from an-
nuities.

(2) ANNUITIES, ETC.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts) under a life insurance, endowment, or annuity contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income.  In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph

Transfers for value.

(1) or this paragraph;

Value of gifts, etc.

(3) GIFTS, BEQUESTS, AND DEVISES.—The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income);

Interest on State
bonds, etc.

(4) TAX-FREE INTEREST.—Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (B) securities issued under the provisions of the Federal Farm Loan Act, or under the provisions of such Act as amended; or (C) the obligations of the United States or its possessions.  Every person owning any of the obligations or securities enumerated in clause (A), (B), or (C) shall, in the return required by this title, submit a statement showing the number and amount of such obligations and securities owned by him and the income received therefrom, in such form and with such information as the Commissioner may require.  In the case of obligations of the United States issued after September 1, 1917 (other than postal savings certificates of deposit), the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the

Farm loan securities.

Federal obligations,
etc.
Statement required
in returns.

Limitation on Lib-
erty bonds, etc.



*STATUTES AT LARGE, 1939*

(d) SPECIAL CLASSES OF CORPORATIONS.—In the case of the following corporations the tax shall be an amount equal to 16½ per centum of the special class net income, regardless of the amount thereof:

(1) Banks, as defined in section 104.

(2) Corporations organized under the China Trade Act, 1922, (42 Stat. 849 (U. S. C., Title 15, c. 4).)

(3) Corporations which, by reason of deriving a large portion of their gross income from sources within a possession of the United States, are entitled to the benefits of section 251.

(e) FOREIGN CORPORATIONS.—

(1) In the case of a foreign corporation engaged in trade or business within the United States or having an office or place of business therein, the tax shall be an amount equal to 19 per centum of the special class net income, regardless of the amount thereof.

(2) In the case of a foreign corporation not engaged in trade or business within the United States and not having an office or place of business therein, the tax shall be as provided in section 231 (a).

(f) INSURANCE COMPANIES.—In the case of insurance companies, the tax shall be as provided in Supplement G.

(g) MUTUAL INVESTMENT COMPANIES.—In the case of mutual investment companies, as defined in Supplement Q, the tax shall be as provided in such Supplement.

(h) EXEMPT CORPORATIONS.—

For corporations exempt from taxation under this chapter, see section 101.

(i) TAX ON PERSONAL HOLDING COMPANIES.—

For surtax on personal holding companies, see section 500.

(j) IMPROPER ACCUMULATION OF SURPLUS.—

For surtax on corporations which accumulate surplus to avoid surtax on stockholders, see section 102.

SEC. 15. CORPORATE TAXES EFFECTIVE FOR TWO TAXABLE YEARS.

The taxes imposed by section 13, section 14 (except subsection (e) (2)), Supplement G, or Supplement Q, of this chapter, or by section 13, section 14, or Supplement G of the Revenue Act of 1936, shall not apply to any taxable year beginning after December 31, 1939.

## Part II—Computation of Net Income

SEC. 21. NET INCOME.

(a) DEFINITION.—"Net income" means the gross income computed under section 22, less the deductions allowed by section 23.

(b) CROSS REFERENCES.—

For definition of "adjusted net income", see section 13 (a); for definition of "special class net income", see section 14 (a).

SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BRUCE P. PLASSE          )
                         )
          Appellant,     )
                         )        Civil Action No. 04-11274-GAO
v.                       )
                         )
UNITED STATES OF AMERICA )
                         )
          Respondent.    )

UNITED STATES OF AMERICA'S REPLY TO
APPELLANT'S MEMORANDUM OF LAW

The United States of America hereby submits this reply to the appellant's "ADENDUM

(SIC) TO PLAINTIFF'S INITIAL PLEADING, PETITION FOR REVIEW OF SECTION 6702, FRIVOLOUS

RETURN PENALTY,/MEMORANDUM OF LAW," filed with this Court on February 16, 2005 ("the

Addendum").

In the Addendum, the appellant demands that this action, an appeal of an administrative

determination allowed under 26 U.S.C. §§ 6320 and 6330, be dismissed without prejudice

because, according to the appellant, this Court has a conflict of interest as a federal employee.

The appellant further asserts his right to a trial by jury on this matter.

While the United States agrees that this appeal should be dismissed, as it argued in the

MOTION TO AFFIRM DETERMINATION OF THE INTERNAL REVENUE SERVICE AND DISMISS THE

PETITION FOR REVIEW OF THE 6702 FRIVOLOUS RETURN PENALTY and the supporting

memorandum, which is scheduled for hearing before the Court on February 24, the United States

8

does not agree on the reason the petition should be dismissed.[1]  Additionally, the appellant is not entitled to a jury trial and, if this action is dismissed, as it should be, the appellant will be precluded by statute from bringing this action again.

The appellant is not entitled to a jury trial on this matter because there is no right to a jury trial in a suit against the United States unless provided for by statute.  Parker v. Commissioner, 724 F.2d 469, 472 (5th Cir. 1984) (citing Mathes v. CIR, 576 F.2d 70, 71 (5th Cir.1978));  Blackburn v. Commissioner, 681 F.2d 461, 462 (6th Cir. 1982).  There is no such provision for a jury trial in 26 U.S.C. § 6330, which authorized this appeal.  Of course, Section 6330 authorizes an administrative appeal of an Internal Revenue Service administrative determination made under 26 U.S.C. § 6320, not a trial.  26 U.S.C. § 6330; Hart v. United States, 291 F. Supp. 2d 635, 640 (N.D. Ohio, 2003)("Courts . . . have determined that actions brought pursuant to [26 U.S.C.] § 6330(d) are actions for administrative review and, thus, the reviewing district court is limited to the administrative record and the parties are not entitled to discovery or jury trial.")

The appellant may not appeal this matter again.  Congress, in 26 U.S.C. § 6330(d), provides taxpayers the right to appeal a determination made by a hearing officer at a Collection Due Process hearing held under 26 U.S.C. § 6320, so long as the appeal is made within thirty

---

[1] The notion that a United States District Judge, whose salary is paid by the United States, cannot preside over a matter in the district court to which the United States is a party has been characterized by one judge faced with such a claim as "farsical, on its face."  United States v. Zuger, 602 F. Supp. 889, 891 (D. Conn. 1984).

days of the determination. Here, the determination was made on May 11, 2004.

(R. 110-115.) This appeal was timely made, but, if it is dismissed, the appellant will be time-barred from another appeal.

> Respectfully submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
>
> /s/ Barry E. Reiferson
> BARRY E. REIFERSON
> Trial Attorney, Tax Division
> U.S. Department of Justice
> Post Office Box 55
> Ben Franklin Station
> Washington, D.C. 20044
> Telephone: (202) 514-6058

I hereby certify that a true copy of the above document was served upon the Appellant, by mail, on February 18, 2005.

/s/ Barry E. Reiferson
Barry E. Reiferson



), added Code Sec. 59A, as part of pter 1, effective for tax. yrs. begin.

SUPPLEMENTAL MEDICARE

[ medicare premium.]

(a), repealed as if not enacted Sec. added Part VIII to Subchapter A of

follows:
AL MEDICARE PREMIUM

premium."
(a), [repealed as if not enacted by e above] added Part VIII to Sub-

(a), repealed as if not enacted Sec. added Code Sec. 59B, effective tax.

(a), [repealed as if not enacted by e above] added Code Sec. 59B as A of chapter 1, effective for tax. 11(d) of this Act provides:

on of Taxable Income

come, adjusted gross income, tc.
ded in gross income.
uded from gross income.
ital status. [Tax exemption re-ate and local bonds.]
l exemptions.
individuals and corporations.
ductions for individuals.
corporations.

orations and their shareholders.
corporate preference items.

(b), amended Part IV. This Act did on the list of Parts for Subchapter ended to do so.
c)(2), added part XI.
)(3), amended the item for Part IV. r Part IV read as follows: ividuals."
)(b)(4)(C), substituted "taxable in-come" in the item for Part I.
dded part X.

OF GROSS INCOME, AD-TAXABLE INCOME, ETC.

efined.

l.

income.
llaneous itemized deductions.
mized deductions.



In 1990, P.L. 101-508, Sec. 11103(d), added item 68.
In 1986, P.L. 99-514, Sec. 132(d), added item 67.
In 1984, P.L. 98-369, Sec. 424(b)(2)(C), deleted "where spouses live apart" from the end of item 66.
In 1980, P.L. 96-605, Sec. 101(b), added item 66.
In 1976, P.L. 94-455, Sec. 1901(b)(4)(A), added items 64 and 65. Sec. 1901(b)(4)(B), substituted "taxable income, etc." for "and taxable income" in the heading for Part I.

## Sec. 61. Gross income defined.

### (a) General definition.

Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, fringe benefits, and similar items;
(2) Gross income derived from business;
(3) Gains derived from dealings in property;
(4) Interest;
(5) Rents;
(6) Royalties;
(7) Dividends;
(8) Alimony and separate maintenance payments;
(9) Annuities;
(10) Income from life insurance and endowment contracts;
(11) Pensions;
(12) Income from discharge of indebtedness;
(13) Distributive share of partnership gross income;
(14) Income in respect of a decedent; and
(15) Income from an interest in an estate or trust.

### (b) Cross references.

For items specifically included in gross income, see part II (sec. 71 and following). For items specifically excluded from gross income, see part III (sec. 101 and following).

In 2002, P.L. 107-134, Sec. 105, of this Act, reads as follows:

"SEC. 105. EXCLUSION OF CERTAIN CANCELLATIONS OF INDEBTEDNESS.

"(a) In general. For purposes of the Internal Revenue Code of 1986—

"(1) gross income shall not include any amount which (but for this section) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of any taxpayer if the discharge is by reason of the death of an individual incurred as the result of the terrorist attacks against the United States on September 11, 2001, or as the result of illness incurred as a result of an attack involving anthrax occurring on or after September 11, 2001, and before January 1, 2002, and

"(2) return requirements under section 6050P of such Code shall not apply to any discharge described in paragraph (1).

"(b) Effective date. This section shall apply to discharges made on or after September 11, 2001, and before January 1, 2002."

In 2001, P.L. 107-16, Sec. 803, of this Act, reads as follows:

"SEC. 803. NO FEDERAL INCOME TAX ON RESTITUTION RECEIVED BY VICTIMS OF THE NAZI REGIME OR THEIR HEIRS OR ESTATES.

"(a) In general. For purposes of the Internal Revenue Code of 1986, any excludable restitution payments received by an eligible individual (or the individual's heirs or estate) and any excludable interest—

"(1) shall not be included in gross income; and

"(2) shall not be taken into account for purposes of applying any provision of such Code which takes into account excludable income in computing adjusted gross income, including section 86 of such Code (relating to taxation of Social Security benefits).

For purposes of such Code, the basis of any property received by an eligible individual (or the individual's heirs or estate) as part of an excludable restitution payment shall be the fair market value of such property as of the time of the receipt.

"(b) Eligible individual. For purposes of this section, the term 'eligible individual' means a person who was persecuted on the basis of race, religion, physical or mental disability, or sexual orientation by Nazi Germany, any other Axis regime, or any other Nazi-controlled or Nazi-allied country.

"(c) Excludable restitution payment. For purposes of this section, the term 'excludable restitution payment' means any payment or distribution to an individual (or the individual's heirs or estate) which—

"(1) is payable by reason of the individual's status as an eligible individual, including any amount payable by any foreign country, the United States of America, or any other foreign or domestic entity, or a fund established by any such country or entity, any amount payable as a result of a final resolution of a legal action, and any amount payable under a law providing for payments or restitution of property;

"(2) constitutes the direct or indirect return of, or compensation or reparation for, assets stolen or hidden from, or otherwise lost to, the individual before, during, or immediately after World War II by reason of the individual's status as an eligible individual, including any proceeds of insurance under policies issued on eligible individuals by European insurance companies immediately before and during World War II; or

"(3) consists of interest which is payable as part of any payment or distribution described in paragraph (1) or (2).

"(d) Excludable interest. For purposes of this section, the term 'excludable interest' means any interest earned by—

"(1) escrow accounts or settlement funds established pursuant to the settlement of the action entitled 'In re: Holocaust Victim Assets Litigation,' (E.D.N.Y.) C.A. No. 96-4849,

"(2) funds to benefit eligible individuals or their heirs created by the International Commission on Holocaust Insurance Claims as a result of the Agreement between the Government of the United States of America and the Government of the Federal Republic of Germany concerning the Foundation 'Remembrance, Responsibility, and Future,' dated July 17, 2000, or

"(3) similar funds subject to the administration of the United States courts created to provide excludable restitution payments to eligible individuals (or eligible individuals' heirs or estates).

"(e) Effective date.

"(1) In general. This section shall apply to any amount received on or after January 1, 2000.

"(2) No inference. Nothing in this Act shall be construed to create any inference with respect to the proper tax treatment of any amount received before January 1, 2000."

In 1988, P.L. 100-647, Sec. 6252(a)(1), repealed Sec. 6 of P. L. 98-4 [reproduced below].

Prior to repeal, Sec. 6 of P. L. 98-4 read as follows:

"Sec. 6. Study.

"(a) General rule.

"The Secretary of the Treasury or his delegate, after consultation with the Secretary of Agriculture, shall conduct a study of

"(1) the 1983 payment-in-kind program, and

"(2) the tax treatment provided with respect to such program by this Act.

"(b) Report.

"Not later than September 1, 1983, the Secretary of the Treasury shall submit to the Congress a report on the study conducted under subsection (a), together with such recommendations as he may deem advisable."

In 1986, P.L. 99-272, Sec. 13207(d), redesignated Sec. 531(g) of P.L. 98-369 as Sec. 531(h) [reproduced below].

In 1984, P.L. 98-369, Sec. 531(c), substituted "commissions, fringe benefits, and similar items" for "commissions, and similar items" in para. (a)(1), effective on 1/1/85. Sec. 531(h) of this Act [as amended by Sec. 13207(d) of P.L. 99-272, see above] provides:

"(h) Moratorium on issuance of regulations relating to faculty housing.

"(1) In general. Any regulation providing for the inclusion in gross income under section 61 of the Internal Revenue Code of 1954 of the excess (if any) of the fair market value of qualified campus lodging over the greater of—

"(A) the operating costs paid or incurred in furnishing such lodging, or

"(B) the rent received for such lodging,

shall not be issued before January 1, 1986.

"(2) Qualified campus lodging. For purposes of this subsection, the term 'qualified campus logding' means lodging which is—

"(A) located on (or in close proximity to) a campus of an educational institution (described in section 170(b)(1)(A)(ii) of the Internal Revenue Code of 1954), and

"(B) provided by such institution to an employee of such institution, or to a spouse or dependent (within the meaning of section 152 of such Code) of such employee.

"(3) Application of subsection. This subsection shall apply with respect to lodging furnished after December 31, 1983, and before January 1, 1986."

—P.L. 98-369, Sec. 1026, provides:

"Sec. 1026. No gain recognized from net gifts made before March 4, 1981.

"(a) In general. In the case of any transfer of property subject to gift tax made before March 4, 1981, for purposes of subtitle A of the Internal Revenue Code of 1954, gross income of the donor shall not include any amount attributable to the donee's payment of (or agreement to pay) any gift tax imposed with respect to such gift.



Page 4267      TITLE 26.—INTERNAL REVENUE CODE      § 62

### REFERENCES IN TEXT

Title II of the Social Security Act, referred to in subsec. (d) (1) (A), is classified to sections 401—425 of Title 42, The Public Health and Welfare.

The Railroad Retirement Act of 1935, referred to in subsec. (d) (1) (B), is set out as a note under former sections 215—228 of Title 45, Railroads.

The Railroad Retirement Act of 1937, referred to in subsec. (d) (1) (B), is classified by section 228a et seq. of Title 45.

### AMENDMENTS

1956—Subsec. (d) (2) amended by act Jan. 28, 1956, to reduce from 75 to 72 the age at which there will be no limitation on earned income and to increase from $900 to $1,200 the amount that an individual over 65 can earn without reducing the $1,200 on which the retirement credit is computed.

1955—Subsec. (f) amended by act Aug. 9, 1955, to extend the retirement income tax credit to members of the Armed Forces.

### EFFECTIVE DATE OF 1956 AMENDMENT

Section 2 of act Jan. 28, 1956, provided that: "The amendment made by the first section of this Act [to subsec. (d) (2)] shall apply only with respect to taxable years beginning after December 31, 1955.".

### EFFECTIVE DATE OF 1955 AMENDMENT

Section 2 of act Aug. 9, 1955, provided that: "The amendment made by this Act [to subsec. (f)] shall be applicable to taxable years beginning after December 31, 1954."

### CROSS REFERENCES

Dividends received credit not allowed on distributions of electing small business corporations, see section 1375 of this title.

Disallowance of credit where tax is computed by Secretary or his delegate, see section 6014 (a) of this title.

## § 38. Overpayments of tax.

    For credit against the tax imposed by this subtitle for overpayments of tax, see section 6401.

(Aug. 16, 1954, 9:45 a. m., E. D. T., ch. 736, 68A Stat. 16.).

## Subchapter B.—Computation of Taxable Income

Part
  I. Definition of gross income, adjusted gross income, and taxable income.
  II. Items specifically included in gross income.
  III. Items specifically excluded from gross income.
  IV. Standard deduction for individuals.
  V. Deductions for personal exemptions.
  VI. Itemized deductions for individuals and corporations.
  VII. Additional itemized deductions for individuals.
  VIII. Special deductions for corporations.
  IX. Items not deductible.

## PART I.—DEFINITION OF GROSS INCOME, ADJUSTED GROSS INCOME, AND TAXABLE INCOME

Sec.
61. Gross income defined.
62. Adjusted gross income defined.
63. Taxable income defined.

## § 61. Gross income defined.

### (a) General definition.

Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

    (1) Compensation for services, including fees, commissions, and similar items;
    (2) Gross income derived from business;
    (3) Gains derived from dealings in property;
    (4) Interest;
    (5) Rents;
    (6) Royalties;
    (7) Dividends;
    (8) Alimony and separate maintenance payments;
    (9) Annuities;
    (10) Income from life insurance and endowment contracts;
    (11) Pensions;
    (12) Income from discharge of indebtedness;
    (13) Distributive share of partnership gross income;
    (14) Income in respect of a decedent; and
    (15) Income from an interest in an estate or trust.

### (b) Cross references.

    For items specifically included in gross income, see part II (sec. 71 and following). For items specifically excluded from gross income, see part III (sec. 101 and following).

(Aug. 16, 1954, 9:45 a. m., E. D. T., ch. 736, 68A Stat. 17.)

### CROSS REFERENCES

Capital gains and losses, see subchapter P of this chapter.

Guaranteed payments to partner for services or use of capital considered as made to one not member of partnership for purposes of this section, see section 707 of this title.

Income from sources—
  Within the United States, see section 861 of this title.
  Without the United States, see section 862 of this title.
Items specifically excluded from gross income—
  Certain death benefits, see section 101 of this title.
  Income from discharge of indebtedness, see section 108 of this title.
Items specifically included in gross income—
  Alimony and separate maintenance payments, see section 71 of this title.
  Annuities; certain proceeds of endowment and life insurance contracts, see section 72 of this title.
Recipients of income in respect of decedents, see section 691 of this title.
Trust income attributable to grantors and others as substantial owners includible in gross income, see section 671 of this title.

## § 62. Adjusted gross income defined.

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

    (1) Trade and business deductions.

The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

    (2) Trade and business deductions of employees.

    (A) Reimbursed expenses.

The deductions allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer.

    (B) Expenses for travel away from home.

The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from

USC, 1958    

Case 1:04-cv-11274-GAO    Document 8    Filed 02/24/2005    Page 13 of 53

For purposes of this paragraph, preferential treatment is accorded such items which are attributable to a foreign country or possession of the United States if such country or possession imposes no significant amount of tax with respect to such items.

Added Pub.L. 91–172, Title III, § 301(a), Dec. 30, 1969, 83 Stat. 583, and amended Pub.L. 92–178, Title III, § 308(a), Dec. 10, 1971, 85 Stat. 524.

### Editorial Notes

Section 308 of Pub.L. 92–178, provided: "(b) Effective date.—The amendment made by this section [amended subsec. (g) (2) by adding last sentence] shall apply to taxable years beginning after December 31, 1969."

## SUBCHAPTER B—COMPUTATION OF TAXABLE INCOME

Part
I. Definition of gross income, adjusted gross income, and taxable income.
II. Items specifically included in gross income.
III. Items specifically excluded from gross income.
IV. Standard deduction for individuals.
V. Deductions for personal exemptions.
VI. Itemized deductions for individuals and corporations.
VII. Additional itemized deductions for individuals.
VIII. Special deductions for corporations.
IX. Items not deductible.
X. Terminal railroad corporations and their shareholders.

## PART I—DEFINITION OF GROSS INCOME, ADJUSTED GROSS INCOME, AND TAXABLE INCOME

Sec.
61. Gross income defined.
62. Adjusted gross income defined.
63. Taxable income defined.

*54 CODE*

## § 61.    Gross income defined

(a) General definition.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

(2) Gross income derived from business;

(3) Gains derived from dealings in property;

(4) Interest;

(5) Rents;

(6) Royalties;

74



ient is accorded such
or possession of the
poses no significant

59, 83 Stat. 583, and
1971, 85 Stat. 524.

e.—The amendment
tence] shall apply to

BLE INCOME

income, and taxable

i.

rations.

eholders.

DJUSTED GROSS
ME

vided in this subtitle,
derived, including (but

commissions, and simi-

(7) Dividends;

(8) Alimony and separate maintenance payments;

(9) Annuities;

(10) Income from life insurance and endowment contracts;

(11) Pensions;

(12) Income from discharge of indebtedness;

(13) Distributive share of partnership gross income;

(14) Income in respect of a decedent; and

(15) Income from an interest in an estate or trust.

(b) Cross references.—

> For items specifically included in gross income, see part II (sec. 71 and following). For items specifically excluded from gross income, see part III (sec. 101 and following).

Aug. 16, 1954, c. 736, 68A Stat. 17.

## § 62.    Adjusted gross income defined

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

(1) Trade and business deductions.—The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee.

(2) Trade and business deductions of employees.—

(A) Reimbursed expenses.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses paid or incurred by the taxpayer, in connection with the performance by him of services as an employee, under a reimbursement or other expense allowance arrangement with his employer.

(B) Expenses for travel away from home.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

(C) Transportation expenses.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

(D) Outside salesmen.—The deductions allowed by part VI (sec. 161 and following) which are attributable to a trade or business carried on by the taxpayer, if such trade or business consists of the performance of services by the taxpayer as an employee and if such trade or business is to solicit, away from the employer's place of business, business for the employer.



effect. (Added June 25, 1940, 11:45 a. m., E. S. T., ch. 419, title II, § 201, 54 Stat. 520; amended Oct. 8, 1940, 11 p. m., E. S. T., ch. 757, title I, § 101 (d), 54 Stat. 974; Sept. 20, 1941, 12:15 p. m., E. S. T., ch. 412, title I, § 104 (a), 55 Stat. 693; Oct. 21, 1942, 4:30 p. m., E. W. T., ch. 619, title I, § 105 (b), 56 Stat. 805; Nov. 8, 1945, 5:17 p. m., E. S. T., ch. 453, title I, §§ 121 (a), 122 (g) (3), 59 Stat. 568, 570; Sept. 23, 1950, 3:15 p. m., E. D. T., ch. 994, title I, pt. II, § 121 (c), 64 Stat. 915; Jan. 3, 1951, 10:13 a. m., ch. 1199, title II, § 201 (a), 64 Stat. 1216; Oct. 20, 1951, 2:07 p. m., E. S. T., ch. 521, title I, § 121 (f), 65 Stat. 468.)

## AMENDMENTS

1951—Act Oct. 20, 1951, amended section generally to restate definition of "corporation surtax net income" in subsec. (a), to impose a tax rate of 22% on surtax net incomes over $25,000, in subsec. (b), and to add subsec. (c).

Subsec. (b) (1) amended by act Jan. 3, 1951, to increase the surtax rate 2 percentage points from 20 per centum to 22 per centum.

1950—Act Sept. 23, 1950, amended section generally to redefine term "corporation surtax net income", and to increase the surtax rate.

1945—Subsec. (a) amended by act Nov. 8, 1945, § 122 (g) (3), which struck out "minus the credit for income subject to the tax imposed by Subchapter E of Chapter 1 provided in section 26 (e) and", and struck out "(computed by limiting such credit to 85 per centum of the net income reduced by the credit for income subject to the tax imposed by Subchapter E of Chapter 2 in lieu of 85 per centum of the adjusted net income so reduced)", in subsec.(b); amended generally by act Nov. 8, 1945, § 121 (a), which decreased the corporation surtax.

1942—Act Oct. 21, 1942, amended section in its entirety.

1941—Act Sept. 20, 1941, amended section in its entirety.

1940—First sentence was amended in its entirety by act Oct. 8, 1940.

## EFFECTIVE DATE OF 1951 AMENDMENT

Amendment of section generally as applicable only with respect to taxable years beginning after Mar. 31, 1951, and to taxable years beginning on Jan. 1, 1951, and ending on Dec. 31, 1951, see note set out under section 13 of this title.

Section 201 (e) of act Jan. 3, 1951, provided that the amendments of subsec. (b) (1) of this section and sections 207 (a) (3) (A) (II), 362 (b) (4), and 421 (a) (1) of this title should be applicable with respect to taxable years beginning on or after July 1, 1950.

## EFFECTIVE DATE OF 1950 AMENDMENT

Amendment of section by act Sept. 23, 1950, as applicable only with respect to taxable years ending after December 31, 1950, see note set out under section 13 of this title.

## EFFECTIVE DATE OF 1945 AMENDMENT

Sections 121 (d) and 122 (g) (3) of act Nov. 8, 1945, provided that the amendments of this section were made applicable to taxable years beginning after Dec. 31, 1945.

## EFFECTIVE DATE OF 1942 AMENDMENT

Section 101 of act Oct. 21, 1942, provided that the amendment of this section was made applicable to taxable years beginning after Dec. 31, 1941.

## EFFECTIVE DATE OF 1941 AMENDMENT

Section 118 of act Sept. 20, 1941, provided that the amendment of this section was made applicable to taxable years beginning after Dec. 31, 1940.

## EFFECTIVE DATE OF 1940 AMENDMENT

Section 101 of act Oct. 8, 1940, provided that the amendment of this section was made applicable to taxable years beginning after Dec. 31, 1939.

## UTILITY

In case of taxable years beginning before April 1, 1951, any reference in subsec. (a) of this section and section 26 (h) of this title to dividends received on preferred stock of public utility to be construed as referring only to dividends received on the preferred stock of public utility with respect to which the credit provided in section 26 (h) of this title for dividends paid was allowable, see note under section 26 of this title.

## OMISSION OF FORMER SECTION

Former section 15, act May 28, 1938, ch. 289, § 15, 52 Stat. 457, relating to corporate taxes effective for two taxable years was omitted by act June 29, 1939, 10 p. m., ch. 247, title II, § 201, 53 Stat. 863, which amended sections 13, 14, and 15 to "read as follows" and failed to reenact said former section 15. Amendment omitting said former section was made applicable only with respect to taxable years beginning after December 31, 1939 by § 229 of said act.

## TREATY OBLIGATIONS

Section 615 of act Oct. 20, 1951, provided that: "No amendment made by this Act [act Oct. 20, 1951] shall apply in any case where its application would be contrary to any treaty obligation of the United States." (g) Similar provisions were contained in the following acts:

1950—Sept. 23, 1950, 3:15 p. m., E. D. T., ch. 994, title II, § 214, 64 Stat. 937.

1942—Oct. 21, 1942, 4:30 p. m., E. W. T., ch. 619, title I, § 109, 56 Stat. 808.

1941—Sept. 20, 1941, 12:15 p. m., E. S. T., ch. 412, title I, § 108, 55 Stat. 695.

## CROSS REFERENCES

Fiscal-year taxpayers, see section 108 of this title.

## PART II.—COMPUTATION OF NET INCOME

### § 21. Net income—(a) Definition.

"Net income" means the gross income computed under section 22, less the deductions allowed by section 23.

(b) Cross references.

For definition of "adjusted net income" and "normal-tax net income", see section 13. (53. Stat. 9; June 29, 1939, 10 p. m. E. S. T., ch. 247, title II, § 210 (a), 53 Stat. 866.)

## DERIVATION

Act May 28, 1938, ch. 289, § 21, 52 Stat. 457.

## 1939 AMENDMENTS

1939—Subsec. (b) amended by act June 29, 1939. Prior to amendment subsec. read as follows:

"(b). Cross references.

"For definition of 'adjusted net income', see section 13 (a). For definition of 'special class net income', see section 14 (a)."

## EFFECTIVE DATE OF 1939 AMENDMENT

Amendment of subsec. (b) made applicable only with respect to taxable years beginning after Dec. 31, 1939, by section 229 of act June 29, 1939.

## SIMILAR PROVISIONS

1936—June 22, 1936, ch. 690, § 21, 49 Stat. 1657.

1934—May 10, 1934, ch. 277, § 21, 48 Stat. 686.

1932—June 6, 1932, ch. 209, § 21, 47 Stat. 178.

1928—May 29, 1928, ch. 852, § 21, 45 Stat. 797.

1926—Feb. 26, 1926, ch. 27, § 212, 44 Stat. 23.

1924—June 2, 1924, ch. 234, § 212, 43 Stat. 267.

### § 22. Gross income—(a) General definition.

"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an



### Left margin notes

"cor-income

rovided in

...e credit for
... provided in

...isphere trade
...9), the credit

paid for each
...ax net income
...ation subject
...upplement G,
...entum of the
...et income in

...und minimum

...fter January
...(other than
...was created
...rty of which
...the time of
...transfer the
...ers; or both;
...tion during
...nsferee cor-
...on shall not
...e otherwise
...owed either
...ded in sub-
...cess profits
...section 431
...ll establish
...ce that the
...was not a
...e purposes
...nership of
...f the total
...stock en-
...f the total
...he corpo-
...stock for
...nership of
...with the
...nstructive
...be deter-
...'s spouse
...ction 129
...der such
...ent with
...icable to
...apply to
...tax im-

officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing; of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal; growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income.

**(b) Exclusions from gross income.**

The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

**(1) Life insurance, etc.**

Amounts received—

(A) under a life insurance contract, paid by reason of the death of the insured; or

(B) under a contract, of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee,

whether in a single sum or otherwise (but if such amounts are held by the insurer, or the employer, under an agreement to pay interest thereon, the interest payments shall be included in gross income). The aggregate of the amounts excludible under subparagraph (B) by all the beneficiaries of the employee under all such contracts of any one employer may not exceed $5,000.

**(2) Annuities, etc.**

(A) In general.

Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during

annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1), or this paragraph. The preceding sentence shall not apply in the case of such a transfer if such contract or interest therein has a basis for determining gain or loss in the hands of a transferee determined in whole or in part by reference to such basis of such contract or interest therein in the hands of the transferor. This subparagraph and paragraph (1) shall not apply with respect to so much of a payment under a life insurance, endowment, or annuity contract, or any interest therein, as, under section 22 (k), is includible in gross income.

(B) Employees' annuities.

If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 23 (p) (1), (B), or if an annuity contract is purchased for an employee by an employer exempt under section 101, (6), the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subparagraph (A) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. In all other cases, if the employee's rights under the contract are nonforfeitable except for failure to pay future premiums, the amount contributed by the employer for such annuity contract on or after such rights become nonforfeitable shall be included in the income of the employee in the year in which the amount is contributed, which amount together with any amounts contributed by the employee shall constitute the consideration paid for the annuity contract in determining the amount of the annuity required to be included in the income of the employee under subparagraph (A) of this paragraph.

(C) Joint and survivor annuities.

For purposes of subparagraphs (A) and (B) of this paragraph, where amounts are received by a surviving annuitant under a joint and survivor's annuity contract and the basis of such survivor annuitant's interest is determined under section 113 (a) (5) the consideration paid for such survivor's annuity shall be considered to be an amount equal to such basis.

**(3) Gifts, bequests, devises, and inheritances.**

The value of property acquired by gift, bequest, devise, or inheritance. There shall not be excluded from gross income under this paragraph, the income from such property, or, in case the gift, bequest, devise, or inheritance is of income from property,

income" means the gross income computed under section 22, less the deductions allowed by section 23.

**Cross references.**

For definition of "adjusted net income" and "normal-tax net income", see section 13. (53 Stat. 9; June 29, 1939, 10 p. m., E. S. T., ch. 247, title II, § 210 (a), 53 Stat. 866.)

DERIVATION

May 28, 1938, ch. 289 § 21; 52 Stat. 457.

AMENDMENTS

Subsec. (b) amended by act June 29, 1939, cited above, and amendment made applicable only with respect to taxable years beginning after Dec. 31, 1939, by said act. Prior to said amendment subsec. read as follows:

"Cross references.

For definition of 'adjusted net income', see section 13. For definition of 'special class net income', see section 14."

SIMILAR PROVISIONS

Act Mar. 22, 1936, ch. 690, § 21; 49 Stat. 1657.
May 10, 1934, ch. 277, § 21, 48 Stat. 686.
June 6, 1932, ch. 209, § 21, 47 Stat. 178.
May 29, 1928, ch. 852, § 21, 45 Stat. 797.
Feb. 26, 1926, ch. 27, § 212, 44 Stat. 23.
June 2, 1924, ch. 234, § 212, 43 Stat. 267.

**§ 22. Gross income—(a) General definition.** "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such judges are hereby amended accordingly.

**(b) Exclusions from gross income.** The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

**(1) Life insurance.** Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

**(2) Annuities, etc.** Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph. The preceding sentence shall not apply in the case of such a transfer if such contract or interest therein has a basis for determining gain or loss in the hands of a transferee determined in whole or in part by reference to such basis of such contract or interest therein in the hands of the transferor. This subparagraph and paragraph (1) shall not apply with respect to so much of a payment under a life insurance, endowment, or annuity contract, or any interest therein, as, under section 22 (k) is includible in gross income.

**(B) Employees' annuities.** If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 23 (p) (1) (B) or if an annuity contract is purchased for an employee by an employer exempt under section 101 (6) the employee shall include in his income the amounts received under such contract for the year received, except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subparagraph (A) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. In all other cases, if the employee's rights under the contract are nonforfeitable except for failure to pay future premiums, the amount contributed by the employer for such annuity contract on or after such rights become nonforfeitable shall be included in the income of the employee in the year in which the amount is contributed, which amount together with any amounts contributed by the employee shall constitute the consideration paid for the annuity contract in determining the amount of the annuity

U.S.C. 1946     (17)

U.S. T., ch. 757, title I, § 101 (a), (b), (c), 54 Stat. 974, amended sections 13 (b), 14 (c) (1), and 862 (b), respectively, of this title.

### CROSS REFERENCE

Extra taxes realized from increase in rate by act June 25, 1940, cited to text, as special fund for retirement of certain government obligations, see note under section 757b of Title 31, Money and Finance.

## PART II.—COMPUTATION OF NET INCOME

### § 21. Net income—(a) Definition.

"Net income" means the gross income computed under section 22, less the deductions allowed by section 23.

(b) Cross-references.

For definition of "adjusted net income" and "normal-tax net income," see section 13. (53 Stat. 9; June 25, 1939, 10 P. m., E. S. T., ch. 247, title II, § 210 (a), 53 Stat. 866.)

DERIVATION.

Act May 28, 1938, ch. 289, § 21, 52 Stat. 457.

1939 AMENDMENT.

Subsection (b) was amended by act June 29, 1939, cited to text, and amendment made applicable only with respect to taxable years beginning after December 31, 1939, by § 229 of said act. Prior to said amendment, subsection read as follows:

"(b) Cross references.

For definition of "adjusted net income," see section 13 (a); for definition of "special class net income," see section 14 (a)."

SIMILAR PROVISIONS.

1936—June 22, 1936, ch. 690, § 21, 49 Stat. 1667.
1934—May 10, 1934, ch. 277, § 21, 48 Stat. 686.
1932—June 6, 1932, ch. 209, § 21, 47 Stat. 178.
1928—May 29, 1928, ch. 852, § 21, 45 Stat. 797.
1926—Feb. 26, 1926, ch. 27, § 212, 44 Stat. 23.
1924—June 2, 1924, ch. 234, § 213, 43 Stat. 267.

### § 22. Gross income—(a) General definition.

"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income.

U.S.C. 1940

Case 1:04-cv-11274-GAO    Document 8    Filed 02/24/2005    Page 19 of 53

*39 CODE*

[Sec. 21]

## SEC. 21.  NET INCOME.

[Sec. 21(a)]

(a) DEFINITION.—"Net income" means the gross income computed under section 22, less the deductions allowed by section 23.

[Sec. 21 (b)]

(b) CROSS REFERENCES.—

For definition of "adjusted net income" and "normal-tax net income," see section 13.

*Amendments:*

Code Sec. 21 (b) was amended by Sec. 210 (a), Revenue Act of 1939, the amendment being applicable to taxable years beginning after December 31, 1939, as provided by Sec. 229, Revenue Act of 1939. Before amendment, the subsection read as follows: "For definition of 'adjusted net income,'

see section 13 (a); for definition of 'special class net income,' see section 14 (a)."

*Source:* As originally enacted, Code Sec. 21 corresponded to Sec. 21, Revenue Act of 1938. The Code divided Sec. 21 of the 1938 Act into two subsections, (a) and (b), adding appropriate headings.

## SEC. 22.  GROSS INCOME.

[Sec. 22]

[Sec. 22(a)]

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income.

*Amendments:*

Sec. 1, Public Salary Tax Act of 1939, added the parenthetical phrase "(including personal service . . . of the foregoing)."

Sec. 3 of the same Act added the last sentence, "In the case of judges, etc."

*Source:* As originally enacted, Code Sec. 22 (a) was the same as Sec. 22 (a), Revenue Act of 1938.

[Sec. 22 (b)]

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

[Sec. 22 (b) (1)]

(1) LIFE INSURANCE.—Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

[Sec. 22 (b) (2)]

(2) ANNUITIES, ETC.—

(A) IN GENERAL.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums

[1] See also Supplement B (Sec. 111 et seq.).

Case 1:04-cv-11274-GAO    Document 8    Filed 02/24/2005    Page 20 of 53

**454**

Sec. 3797.  Definitions—Continued

(4) DOMESTIC.—The term "domestic" when applied to a corporation or a partnership means created or organized in the United States or under the law of the United States or of any State or Territory.

*Source:* Sec. 901 (a) (4), Revenue Act of 1938.  No change.    Similar provisions have appeared in other Revenue Acts.

(5) FOREIGN.—The term "foreign" when applied to a corporation or partnership means a corporation or partnership which is not domestic.

*Source:* Sec. 901 (a) (5), Revenue Act of 1938.  No change.    Similar provisions have appeared in other Revenue Acts.

(6) FIDUCIARY.—The term "fiduciary" means a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any person.

*Source:* Sec. 901 (a) (6), Revenue Act of 1938.  No change.    Similar provisions have appeared in other Revenue Acts.

(7) STOCK.—The term "stock" includes the share in an association, joint-stock company, or insurance company.

*Source:* Sec. 901 (a) (8), Revenue Act of 1938.  No change.    Similar provisions have appeared in other Revenue Acts.

(8) SHAREHOLDER.—The term "shareholder" includes a member in an association, joint-stock company, or insurance company.

*Source:* Sec. 901 (a) (9), Revenue Act of 1938.  No change.    Similar provisions have appeared in other Revenue Acts.

(9) UNITED STATES.—The term "United States" when used in a geographical sense includes only the States, the Territories of Alaska and Hawaii, and the District of Columbia.

*Source:* Sec. 901 (a) (10), Revenue Act 1938.  No change.    Similar provisions have appeared in other Revenue Acts.

(10) STATE.—The word "State" shall be construed to include the Territories and the District of Columbia, where such construction is necessary to carry out provisions of this title.

*Source:* Sec. 3140, Revised Statutes.  No change.

(11) SECRETARY.—The term "Secretary" means the Secretary of the Treasury.

*Source:* Sec. 901 (a) (11), Revenue Act 1938.  No change.    Similar provisions have appeared in other Revenue Acts.

(12) COMMISSIONER.—The term "Commissioner" means the Commissioner of Internal Revenue.

*Source:* Sec. 901 (a) (12), Revenue Act 1938.  No change.    Similar provisions have appeared in other Revenue Acts.

(13) COLLECTOR.—The term "collector" means collector of internal revenue.

*Source:* Sec. 901 (a) (13), Revenue Act 1938.  No change.    Similar provisions have appeared in other Revenue Acts.

(14) TAXPAYER.—The term "taxpayer" means any person subject to a tax imposed by this title.

*Source:* Sec. 901 (a) (14), Revenue Act of 938.  The Code substituted "title" for "Act."    Similar provisions have appeared in other Revenue Acts.

**Sec. 3797**



excess of $56,000, 30 per centum in addition of such excess.

$9,500 upon surtax net incomes of $56,000; and upon surtax net incomes in excess of $56,000 and not in excess of $62,000, 33 per centum in addition of such excess.

$11,480 upon surtax net incomes of $62,000; and upon surtax net incomes in excess of $62,000 and not in excess of $68,000, 36 per centum in addition of such excess.

$13,640 upon surtax net incomes of $68,000; and upon surtax net incomes in excess of $68,000 and not in excess of $74,000, 39 per centum in addition of such excess.

$15,980 upon surtax net incomes of $74,000; and upon surtax net incomes in excess of $74,000 and not in excess of $80,000, 42 per centum in addition of such excess.

$18,500 upon surtax net incomes of $80,000; and upon surtax net incomes in excess of $80,000 and not in excess of $90,000, 45 per centum in addition of such excess.

$23,000 upon surtax net incomes of $90,000; and upon surtax net incomes in excess of $90,000 and not in excess of $100,000, 50 per centum in addition of such excess.

$28,000 upon surtax net incomes of $100,000; and upon surtax net incomes in excess of $100,000, and not in excess of $150,000, 52 per centum in addition of such excess.

$54,000 upon surtax net incomes of $150,000; and upon surtax net incomes in excess of $150,000 and not in excess of $200,000, 53 per centum in addition of such excess.

$80,500 upon surtax net incomes of $200,000; and upon surtax net incomes in excess of $200,000 and not in excess of $300,000, 54 per centum in addition of such excess.

$134,500 upon surtax net incomes of $300,000; and upon surtax net incomes in excess of $300,000 and not in excess of $400,000, 55 per centum in addition of such excess.

$189,500 upon surtax net incomes of $400,000; and upon surtax net incomes in excess of $400,000 and not in excess of $500,000, 56 per centum in addition of such excess.

$245,500 upon surtax net incomes of $500,000; and upon surtax net incomes in excess of $500,000 and not in excess of $750,000, 57 per centum in addition of such excess.

$388,000 upon surtax net incomes of $750,000; and upon surtax net incomes in excess of $750,000 and not in excess of $1,000,000, 58 per centum in addition of such excess.

$533,000 upon surtax net incomes of $1,000,000; and upon surtax net incomes in excess of $1,000,000, 59 per centum in addition of such excess.

**(c) Tax on personal holding companies.** For surtax on personal holding companies, see section 331.

**(d) Avoidance of surtaxes by incorporation.** For surtax on corporations which accumulate surplus to avoid surtax on stockholders, see section 104. (May 10, 1934, 11: 40 a. m., c. 277, § 12, 48 Stat. 684.)

**§ 13. Tax on corporations.** (a) Rate of tax. There shall be levied, collected, and paid for each taxable year upon the net income of every corporation, a tax of 13¾ per centum of the amount of the net income in excess of the credit against net income provided in section 26.

**(b) Exempt corporations.** For corporations exempt from tax, see section 103.

**(c) Tax on personal holding companies.** For surtax on personal holding companies, see section 331.

**(d) Improper accumulation of surplus.** For surtax on corporations which accumulate surplus to avoid surtax on stockholders, see section 104. (May 10, 1934, 11: 40 a. m., c. 277, § 13, 48 Stat. 686.)

**§ 14. Taxable period embracing years with different laws.** If a taxable period embraces portions of two calendar years for which the laws are different,

the tax shall be computed as provided in section 105. (June 6, 1932, c. 209, § 14, 47 Stat. 177.)

## PART II.—COMPUTATION OF NET INCOME

**§ 21. Net income.** "Net income" means the gross income computed under section 22, less the deductions allowed by section 23. (May 10, 1934, 11: 40 a. m., c. 277, § 21, 48 Stat. 686.)

**§ 22. Gross income.** (a) General definition. "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly.

**(b) Exclusions from gross income.** The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(1) **Life insurance.** Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

(2) **Annuities, etc.** Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts, and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph;

(3) **Gifts, bequests, and devises.** The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income);

(4) **Tax-free interest.** Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (B) obligations of a corporation organized under Act of Congress, if such corporation is an instrumentality of the United States; or (C) the obligations of the United States or its possessions. Every person owning any of the obligations enumerated in clause (A), (B), or (C) shall, in the return required by this chapter, submit a statement showing the number and amount of such obligations owned by him and the income received therefrom, in such form and with such information as the Commissioner may require. In the case of obligations of the United States issued

(b) Cross references. For definition of "adjusted income" and "normal-tax net income", see section 13. (53 Stat. 9, as amended June 29, 1939, 10 p. m., E. S. T., c. 247, Title II, § 210 (a), 53 Stat. 866.)

Subsec. (b) was amended by Act June 29, 1939, cited to and amendment made applicable only with respect to taxable years beginning after December 31, 1939, by § 229 of said Act. Prior to said amendment subsection read as follows:

"(b) Cross references

"For definition of 'adjusted net income', see section 13 (a); definition of 'special class net income', see section 14."

Derived from Act May 28, 1938, c. 289, § 21, 52 Stat. 457; similar provisions: Acts June 22, 1936, c. 690, § 21, 49 Stat. 1657; May 10, 1934, c. 277, § 21, 48 Stat. 686; June 6, 1932, c. 209, § 21, 47 Stat. 178; May 29, 1928, c. 852, Title I, 45 Stat. 797; June 26, 1926, c. 27, 212, 44 Stat. 24; June 2, 1924, c. 234, § 212, 43 Stat. 267.

§ 22. Gross income—(a) General definition. "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income as it was amended April 12, 1939, c. 59, Title I, § 3, 53 Stat. 574, 575.)

(b) Exclusions from gross income.—The following shall not be included in gross income and shall be exempt from taxation under this chapter:

(1) Life insurance. Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income); but if such amounts (other than amounts paid by reason of the death of the insured or interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year) until the aggregate amount excluded from gross income under this chapter or prior income tax laws, in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) of this subsection.

(3) Gifts, bequests, and devises. The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income);

(4) Tax-free interest. Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (B) obligations of a corporation organized under Act of Congress, if such corporation is an instrumentality of the United States; or (C) the obligations of the United States or its possessions. Every person owning any of the obligations enumerated in clause (A), (B), or (C) shall, in the return required by this chapter, submit a statement showing the number and amount of such obligations owned by him and the income received therefrom, in such form and with such information as the Commissioner may require. In the case of obligations of the United States issued after September 1, 1917 (other than postal savings certificates of deposit) and in the case of obligations of a corporation organized under Act of Congress, the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the issue thereof, as amended and supplemented, and shall be excluded from gross income only if and to the extent it is wholly exempt from the taxes imposed by this chapter.

(5) Compensation for injuries or sickness. Amounts received, through accident or health insurance or under workmen's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received, whether by suit or agreement, on account of such injuries or sickness;

(6) Ministers. The rental value of a dwelling house and appurtenances thereof furnished to a minister of the gospel as part of his compensation;

(7) Income exempt under treaty. Income of any kind, to the extent required by any treaty obligation of the United States;

(8) Miscellaneous items. The following items, to the extent provided in section 116:

(A) Earned income from sources without the United States;

(B) Salaries of certain Territorial employees;

(C) The income of foreign governments;

(D) Income of States, municipalities, and other political subdivisions;

(E) Receipts of shipowners' mutual protection and indemnity associations;

(F) Dividends from China Trade Act corporations;

(G) Compensation of employees of foreign governments.

(9) Income from discharge of indebtedness. In the case of a corporation, the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or of which the taxpayer is liable evidenced by a security (as hereinafter in this paragraph defined) if—

(A) it is established to the satisfaction of the Commissioner, or it is certified to the Commissioner by any Federal agency authorized to make, loans on behalf of the United States, to such corporation, or by any Federal agency authorized to exercise regulatory power over such corporation, authorized to such corporation, that at the time of such discharge the taxpayer was in an unsound financial condition, and if the taxpayer makes and files at the time of filing the return in such manner as the Commissioner with the approval of the Secretary by regulations prescribes its consent to the regulations prescribed under section 113 (b) (3) then in effect. In such case the amount of any income of the taxpayer attributable to any unamortized premium (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be included in gross income and the amount of the deduction attributable to any unamortized discount (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be allowed as a deduction. As used in this paragraph the term "security" means any bond, debenture, note,

— USC COMPACT EDITION — DEC 3 1928

der section 951 plus 25 per centum of the tax which would be payable under section 932 if his earned net income constituted his entire net income.

(c). In the case of the members of a partnership the proper part of each share of the net income which consists of earned income shall be determined under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary and shall be separately shown in the return of the partnership and shall be taxed to the member as provided in section 959. (June 2, 1924, 4:01 p. m., c. 234, § 209, 43 Stat. 263; Feb. 26, 1926, c. 27, § 209, 44 Stat. 32.)

For corresponding provisions of the Revenue Act of 1928, see sections 2931 and 218 of this title.

## PART II.—INDIVIDUALS

§ 951. Normal tax rates; aliens residents of contiguous countries. [Repealed by Act May 29, 1928, 8:00 a. m., c. 852, § 63, 45 Stat. 810.]

See § 203 of this title.

§ 952. Surtax; rates; bona fide sales of mines, oil, or gas wells. [Repealed by Act May 29, 1928, 8:00 a. m., c. 852, § 63, 45 Stat. 810.]

See § 203 of this title.

§ 953. Net income; computation; change of accounting period; installment sales. (a) In the case of an individual the term "net income" means the gross income as defined in section 954 of this title, less the deductions allowed by sections 937 and 955.

(b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 931 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

(c) If a taxpayer changes his accounting period from fiscal year to calendar year, from calendar year to fiscal year, or from one fiscal year to another, the net income shall, with the approval of the Commissioner, be computed on the basis of such new accounting period, subject to the provisions of section 968.

(d) Under regulations prescribed by the commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed bears to the total contract price. In the case of (1) a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may under regulations prescribed by the commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made. (June 2, 1924, 4:01 p. m., c. 234, § 212, 43 Stat. 267; Feb. 26, 1926, c. 27, § 212, 44 Stat. 23.)

§ 953a. Retroactive application of section 953; credits and refunds. The provisions of subdivision (d) of section 953 of this title shall be retroactively applied in computing income under the provisions of the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any of such Acts as amended. Any tax that has been paid under such Acts prior to February 26, 1926, if in excess of the tax imposed by such acts as retroactively modified by this section, shall, subject to the statutory period of limitations properly applicable thereto, be

credited or refunded to the taxpayer as provided in section 1065 of this title. (Feb. 26, 1926, c. 27, § 1208, Stat. 130.)

§ 954. Gross income; what included; what not included. For the purposes of this chapter, except as otherwise provided in section 985—

(a) The term "gross income" includes gains, profits and income derived from salaries, wages, or compensation for personal service (including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received, as such) of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 953, any such amounts are to be properly accounted for as of a different period.

(b) The term "gross income" does not include the following items, which shall be exempt from taxation under this title:

(1) Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or in installments (but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income);

(2) Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts) under a life insurance, endowment, or annuity contract; but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income; in case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph;

(3) The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income);

(4) Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia, or (B) securities issued under the provisions of chapters 7 and 8 of Title 12 (the Federal Farm Loan Act); or, under the provisions of such Act as amended; or, (C) the obligations of the United States or its possessions. Every person owning any of the obligations or securities enumerated in clause (A), (B), (C), shall, in the return required by this chapter, submit a statement showing the number and amount of such obligations and securities owned by him and the income received therefrom, in such form and with such information as the Commissioner may require. In the case of obligations of the United States issued after September 1, 1917 (other than postal savings certificates of deposit), the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the issue thereof as amended and supplemented, and shall be excluded from gross income only if and to the extent it is wholly exempt to the taxpayer from income taxes;

(5) The income of foreign governments received from investments in the United States in stocks, bonds, or other domestic securities, owned by such foreign governments, or from interest on deposits in banks in the United States of moneys belonging to such foreign governments, or from any other source within the United States;

(6) Amounts received, through accident or health insurance or under workmen's

# MERCHANTS' L. & T. CO. v. SMIETANKA.

255 U.S. 509

## MERCHANTS' LOAN & TRUST COMPANY, TRUSTEE OF ESTATE OF RYERSON, v. SMIETANKA, FORMERLY UNITED STATES COLLECTOR OF INTERNAL REVENUE FOR THE FIRST DISTRICT OF THE STATE OF ILLINOIS.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 608.  Argued January 11, 12, 1921.—Decided March 28, 1921.

1. A provision in a will creating a trust that accretions of selling value shall be considered principal and not income, can not render them non-taxable under the income tax law. P. 516.

2. A trustee, invested by will with full dominion over an estate, in trust to pay the net income to the testator's widow for life, and afterwards to use it for the benefit of his children and to pay over their shares as they reached a certain age, sold certain corporate stock, part of the original assets, for a price greater than their cash



EXHIBIT 2110



510                    OCTOBER TERM, 1920.

value on March 1, 1913. *Held*, (no earlier value being involved) that the gain after March 1, 1913, was taxable as income, for the year when the sale was made, to the trustee as a "taxable person," under the Income Tax Law of September 8, 1916, as amended by the Law of October 3, 1917. P. 516. *Cf. Goodrich* v. *Edwards, post,* 527; *Walsh* v. *Brewster, post,* 536.

3. Income, within the meaning of the Sixteenth Amendment, the Income Tax Acts of 1913, 1916, 1917, and the Corporation Tax Act of 1909, is a gain derived from capital, from labor, or from both combined, including profit gained through sale or conversion of capital assets. P. 517. *Eisner* v. *Macomber,* 252 U. S. 189, 207.

4. It includes the gain from capital realized by a single, isolated sale of property held as an investment, as well as profits realized by sales in a business of buying and selling such property. P. 520. *Gray* v. *Darlington,* 15 Wall. 63, and *Lynch* v. *Turnish,* 247 U. S. 221, distinguished.

Affirmed.

THE case is stated in the opinion.

*Mr. Albert M. Kales,* with whom *Mr. Walter L. Fisher* was on the brief, for plaintiff in error:

Assuming that the Income Tax Act of 1916, as amended by the Act of 1917, attempted to tax as income the increase in value since March 1, 1913, or date of purchase subsequent to that time, of the stock and bonds in question upon the ascertainment of the increment of value by conversion or redemption, the act was in violation of the Constitution.

In accordance with the statement of this court in *Eisner* v. *Macomber,* 252 U. S. 189, 206, it is now settled that the mere increase in the value of capital assets prior to any conversion or redemption, is not "income" within the meaning of the Sixteenth Amendment. *Gray* v. *Darlington,* 15 Wall. 63, 66; *Lynch* v. *Turnish,* 247 U. S. 221, 231.

The conversion by the trustee does not cause the increase in the value of capital assets to be "income," for the reason that the increase after the single isolated

## MERCHANTS' L. & T. CO. *v.* SMIETANKA.    517

future distribution under the terms of the will or trust shall be likewise taxed, the tax in each instance, except when the income is returned for the purpose of the tax by the beneficiary, to be assessed to the executor, administrator, or trustee, as the case may be."

Further, § 2 (c) clearly shows that it was the purpose of Congress to tax gains, derived from such a sale as we have here, in the manner in which this fund was assessed, by providing that "for the purpose of ascertaining the gain derived from the sale or other disposition of property, real, personal, or mixed, acquired before March first, nineteen hundred and thirteen, the fair market price or value of such property as of March first, nineteen hundred and thirteen, shall be the basis for determining the amount of such gain derived."

Thus, it is the plainly expressed purpose of the act of Congress to treat such a trustee as we have here as a "taxable person" and for the purposes of the act to deal with the income received for others precisely as if the beneficiaries had received it in person.

There remains the question, strenuously argued, whether this gain in four years of over $700,000 on an investment of about $500,000 is "income" within the meaning of the Sixteenth Amendment to the Constitution of the United States.

The question is one of definition and the answer to it may be found in recent decisions of this court.

The Corporation Excise Tax Act of August 5, 1909, c. 6, 36 Stat. 11, 112, was not an income tax law, but definition of the word "income" was so necessary to its administration that in an early case it was formulated as "the gain derived from capital, from labor, or from both combined." *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 415.

This definition, frequently approved by this court, received an addition, in its latest income tax decision, which

is especially significant in its application to such a case as we have here, so that it now reads: "Income may be defined as the gain derived from capital, from labor, or from both combined," *provided it be understood to include profit gained through a sale or conversion of capital assets,* *Eisner v. Macomber,* 252 U. S. 189, 207.

The use made of this definition of "income" in the decision of cases arising under the Corporation Excise Tax Act of August 5, 1909, and under the Income Tax Acts is, we think, decisive of the case before us. Thus, in two cases arising under the Corporation Excise Tax Act:

In *Hays* v. *Gauley Mountain Coal Co.,* 247 U. S. 189, a coal company, without corporate authority to trade in stocks, purchased shares in another coal mining company in 1902, which it sold in 1911, realizing a profit of $210,000. Over the same objection made in this case, that the fund was merely converted capital, this court held that so much of the profit upon the sale of the stock as accrued subsequent to the effective date of the act was properly treated as income received during 1911, in assessing the tax for that year.

In *United States* v. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.,* 247 U. S. 195, a railroad company purchased shares of stock in another railroad company in 1900 which it sold in 1909, realizing a profit of $814,000. Here, again, over the same objection, this court held that the part of the profit which accrued subsequent to the effective date of the act was properly treated as income received during the year 1909 for the purposes of the act.

Thus, from the price realized from the sale of stock by two investors, as distinguished from dealers, and from a single transaction as distinguished from a course of business, the value of the stock on the effective date of the tax act was deducted and the resulting gain was treated by this court as "income" by which the tax was measured.

It is obvious that these decisions in principle rule the



EISNER *v.* MACOMBER.   189

# EISNER, AS COLLECTOR OF UNITED STATES INTERNAL REVENUE FOR THE THIRD DISTRICT OF THE STATE OF NEW YORK, *v.* MACOMBER.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 318.  Argued April 16, 1919, restored to docket for reargument May 19, 1919; reargued October 17, 20, 1919.—Decided March 8, 1920.

Congress was not empowered by the Sixteenth Amendment to tax, as income of the stockholder, without apportionment, a stock dividend made lawfully and in good faith against profits accumulated by the corporation since March 1, 1913.  P. 201.  *Towne* v. *Eisner*, 245 U. S. 418.

The Revenue Act of September 8, 1916, c. 463, 39 Stat. 756, plainly evinces the purpose of Congress to impose such taxes and is to that extent in conflict with Art. I, § 2, cl. 3, and Art. I, § 9, cl. 4, of the Constitution.  Pp. 199, 217.

These provisions of the Constitution necessarily limit the extension, by construction, of the Sixteenth Amendment.  P. 205.

What is or is not "income" within the meaning of the Amendment must be determined in each case according to truth and substance, without regard to form.  P. 206.

Income may be defined as the gain derived from capital, from labor, or from both combined, including profit gained through sale or conversion of capital.  P. 207.

Mere growth or increment of value in a capital investment is not income; income is essentially a gain or profit in itself of exchangeable value, proceeding from capital, severed from it, and derived or received by the taxpayer for his separate use, benefit and disposal.  *Id.*

A stock dividend—evincing merely a transfer of an accumulated surplus to the capital account of the corporation—takes nothing from the property of the corporation and adds nothing to that of the shareholder; a tax on such dividends is a tax on capital increase and not on income, and to be valid under the Constitution such taxes must be apportioned according to population in the several States.  P. 208.

Affirmed.

EISNER *v.* MACOMBER.    207

come," as used in common speech, in order to determine its meaning in the Amendment; and, having formed also a correct judgment as to the nature of a stock dividend, we shall find it easy to decide the matter at issue.

After examining dictionaries in common use (Bouv. L. D.; Standard Dict.; Webster's Internat. Dict.; Century Dict.), we find little to add to the succinct definition adopted in two cases arising under the Corporation Tax Act of 1909 (*Stratton's Independence* v. *Howbert,* 231 U. S. 399, 415; *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179, 185)—"Income may be defined as the gain derived from capital, from labor, or from both combined," provided it be understood to include profit gained through a sale or conversion of capital assets, to which it was applied in the *Doyle Case* (pp. 183, 185).

Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The Government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word "gain," which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. "*Derived—from—capital*"; "*the gain—derived—from—capital*," etc. Here we have the essential matter: *not a gain accruing to* capital, not a *growth* or *increment* of value *in the investment;* but a *gain,* a *profit,* something of exchangeable value *proceeding from* the property, *severed from* the capital however invested or employed, and *coming in,* being "*derived,*" that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal;—*that* is income derived from property. Nothing else answers the description.

The same fundamental conception is clearly set forth in the Sixteenth Amendment—"incomes, *from* whatever *source derived*"—the essential thought being expressed

69   (29)

**6875-4**          **1986 Code—Subtitle F, Ch. 79**

respectively, and by inserting after subsection (a) new subsection (b), above.

**The above amendment applies to tax years beginning after December 31, 1984. A transitional rule appears below.**

**P.L. 98-369, § 138(b)(2) and (3) provides:**

(2) Transitional Rule for Applying Substantial Presence Test.—

(A) If an alien individual was not a resident of the United States as of the close of calendar year 1984, the determination of whether such individual meets the substantial presence test of section 7701(b)(3) of the Internal Revenue Code of 1954 (as added by this section) shall be made by only taking into account presence after 1984.

(B) If an alien individual was a resident of the United States as of the close of calendar year 1984, but was not a

resident of the United States as of the close of calendar year 1983, the determination of whether such individual meets such substantial presence test shall be made by only taking into account presence in the United States after 1983.

(3) Transitional Rule for Applying Lawful Residence Test.—In the case of any individual who—

(A) was a lawful permanent resident of the United States (within the meaning of section 7701(b)(5) of the Internal Revenue Code of 1954 (as added by this section)) during calendar year 1984, or

(B) was present in the United States at any time during 1984 while such individual was a lawful permanent resident of the United States (within the meaning of such section 7701(b)(5)), for purposes of section 7701(b)(2)(A) of such Code (as so added), such individual shall be treated as a resident of the United States during 1984.

---

**[Sec. 7701(c)]**

(c) INCLUDES AND INCLUDING.—The terms "includes" and "including" when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined.

**Amendments**          **The above amendment applies to tax years beginning after December 31, 1984.**

**P.L. 98-369, § 138(a):**

Act Sec. 138(a) amended Code Sec. 7701 by redesignating subsection (b) as subsection (c).

---

**[Sec. 7701(d)]**

(d) COMMONWEALTH OF PUERTO RICO.—Where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, references in this title to possessions of the United States shall be treated as also referring to the Commonwealth of Puerto Rico.

**Amendments**          **The above amendment applies to tax years beginning after December 31, 1984.**

**P.L. 98-369, § 138(a):**

Act Sec. 138(a) amended Code Sec. 7701 by redesignating subsection (c) as subsection (d).

---

**[Sec. 7701(e)]**

(e) TREATMENT OF CERTAIN CONTRACTS FOR PROVIDING SERVICES, ETC.—For purposes of chapter 1—

(1) IN GENERAL.—A contract which purports to be a service contract shall be treated as a lease of property if such contract is properly treated as a lease of property, taking into account all relevant factors including whether or not—

(A) the service recipient is in physical possession of the property,

(B) the service recipient controls the property,

(C) the service recipient has a significant economic or possessory interest in the property,

(D) the service provider does not bear any risk of substantially diminished receipts or substantially increased expenditures if there is nonperformance under the contract,

(E) the service provider does not use the property concurrently to provide significant services to entities unrelated to the service recipient, and

(F) the total contract price does not substantially exceed the rental value of the property for the contract period.

(2) OTHER ARRANGEMENTS.—An arrangement (including a partnership or other pass-thru entity) which is not described in paragraph (1) shall be treated as a lease if such arrangement is properly treated as a lease, taking into account all relevant factors including factors similar to those set forth in paragraph (1).

(3) SPECIAL RULES FOR CONTRACTS OR ARRANGEMENTS INVOLVING SOLID WASTE DISPOSAL, ENERGY, AND CLEAN WATER FACILITIES.—

(A) IN GENERAL.—Notwithstanding paragraphs (1) and (2), and except as provided in paragraph (4), any contract or arrangement between a service provider and a service recipient—

(i) with respect to—

(I) the operation of a qualified solid waste disposal facility,

**Sec. 7701(c)**



(II) the sale to the [...] cogeneration or alterna[...]

(III) the operation [...]

(ii) which purports to b[...]
shall be treated as a service con[...]

(B) QUALIFIED SOLID WASTE [...]
"qualified solid waste disposal f[...]
disposal services for residents of [...]
of the solid waste processed at s[...]

(C) COGENERATION FACILIT[...]
facility" means a facility which [...]
electrical or mechanical power i[...]

(D) ALTERNATIVE ENERGY [...]
"alternative energy facility" me[...]
primary energy source for the fa[...]

(E) WATER TREATMENT WO[...]
"water treatment works facility[...]
212(2) of the Federal Water Pol[...]

(4) PARAGRAPH (3) NOT TO APPLY [...]

(A) IN GENERAL.—Paragra[...]
facility, cogeneration facility, alt[...]
under a contract or arrangement[...]

(i) the service recipient [...]

(ii) the service recipien[...]
there is nonperformance un[...]
the control of the service pr[...]

(iii) the service recipien[...]
if the operating costs of such [...]
under the contract or arran[...]

(iv) the service recipie[...]
required to purchase, all or [...]
than for fair market value).

For purposes of this paragraph, t[...]
section 168(h).

(B) SPECIAL RULES FOR APPL[...]
AND ALLOCATIONS UNDER THE CON[...]
taken into account—

(i) any right of a servi[...]
power the service recipient r[...]
service provider, or

(ii) any allocation of an[...]
law.

(C) SPECIAL RULES FOR APPLI[...]

(i) TEMPORARY SHUT-DO[...]
there shall not be taken int[...]
maintenance, or capital imp[...]
or similar financial difficult[...]

(ii) REDUCED COSTS.—F[...]
be taken into account any [...]
service recipient under the [...]
production or efficiency or t[...]

(5) EXCEPTION FOR CERTAIN LO[...]
property described in clause (i), (ii), [...]
housing) if—

Internal Revenue Code

I.    American Jurisprudence 2nd, Volume 16B §920 Definiteness or vagueness of laws, regulations, and orders: "The void-for-vagueness doctrine is embodied in the Due Process Clauses of the Fifth and Fourteenth Amendments, and it is a general principle of statutory law that a statute must be definite to be valid.  A statute is void for vagueness when its prohibition is so vague as to leave an individual without knowledge of the nature of the activity that is prohibited.  To pass constitutional muster, statutes challenged as vague must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and provide explicit standards for those who apply it to avoid arbitrary and discriminatory enforcement. ..."

Gould vs. Gould, 245 U.S. 151 at 153

Montilo Salt Co. vs Utah, 221 U.S. 452 at 455, 466, says:

"Statute must clearly define the persons that are the subject of the statute it cannot extend statutory provision by implication to a person not specifically defined.  If it does not define the person then the person is not the subject of the statute."

Corpus Juris Secundum, Volume 85 §1701: "All persons within the terms of an income tax statute are subject to the tax.  No person not specially described in the statute imposing the tax or not clearly within the meaning of the general terms, which the statute employs is subject to taxation.  A statute may not be extended by implication to make liable persons other than those within its terms. ..."

Blacks Law Dictionary fortifies my position as it proves as a matter of law that the definitions within the law must sustain themselves within the confines of the text or "term",

EXHIBIT E

... contract is ...
... rce such contr...
... ine ... tly or e...
... al perform...
y ... used t...
t by the perfor...
the parties t...
... rce the contra...
rust if the set...
... him a benefic...
... benefit from ...
t. Second, Trust...

... the rule that ...
... rs which its cha...
r as incidenta...
... are directly an...
... ion of the pow...
... able the corpor...
... ation.

... ncident to arre...
... aneous with the...
... te vicinity of the...
: U.S. 36, 86 S...
... incident to arre...

... is "incidental to ...
... sation Act, whe...
... her employment...
... remises which ...
... acy ... use of such...
r ... Inc...

... and old English...
; to come to pass...
... oject or liable to ...
... of a law ...

... n; it begins. In ...
... in action at law...
... e issue-roll, were...
... nts, this was di...
..., the beginning...
... voke; encourag...
... in motion, as to...
... criminal law ...
... commit a crime...
... "abet." ...
... ettor; an acce...

... improper; outl...

... na aliqua part...
... vel responder...
... orspékts, yuw...
... jùwdskeriy...
... looking acti...

**Rule** of a law, to give judgment or advice, upon a view of any one clause of it.

**Incivile est, nisi tota sententia inspecta, de aliqua parte judicare** /insívilíy èst, náysay tówtə santénsh(iy)ə insrékta, diy ǽləkwə pártiy jùwdəkériy/. It is irregular, legally improper, to pass an opinion upon any part of a sentence, without examining the whole.

**In civilibus ministerium excusat, in criminalibus non item** /in səvíləbəs mìnəstíriyəm əkskyúwzət, ìn krìmənéyləbəs nòn áytəm/. In civil matters agency (or service) excuses, but not so in criminal matters.

**Incivism** /ínsəvìzəm/. Unfriendliness to the state or government of which one is a citizen.

**In claris non est locus conjecturis** /in klérəs nón èst lówkəs kònjəkt(y)úrəs/. In things obvious there is no room for conjecture.

**Inclausa** /ìnklɔ́zə/. In old records, a home close or inclosure near the house.

**Inclose.** To surround; to encompass; to bound; fence; hem in, on all sides. To shut up.

**Inclosed lands.** Lands which are actually inclosed and surrounded with fences.

**Inclosure.** In old English law, act of freeing land from rights of common, commonable rights, and generally all rights which obstruct cultivation and the productive employment of labor on the soil.

Land surrounded by some visible obstruction. An artificial fence around one's estate. *See* Close.

**Include.** (Lat. *Includere*, to shut in, keep within.) To confine within, hold as in an inclosure; take in, attain, shut up, contain, inclose, comprise, comprehend, embrace, involve. Term may, according to context, express an enlargement and have the meaning of *and* or in *addition to*, or merely specify a particular thing already included within general words theretofore used. "Including" within statute is interpreted as a word of enlargement or of illustrative application as well as a word of limitation. Premier Products Co. v. Cameron, 240 Or. 123, 400 P.2d 227, 228.

**Included offense.** In criminal law, a crime which is part of another crime; *e.g.* included in every murder is assault and battery. One which is established by proof of the same or less than all of the facts, or a less culpable mental state, or both, than that which is required to establish commission of offense charged. People v. Lyons, 26 Ill.App.3d 193, 324 N.E.2d 677, 680. To be an "included offense", all elements of the lesser offense must be contained in the greater offense, the greater containing certain elements not contained in the lesser. Gaskin v. State, 244 Ark. 541, 426 S.W.2d 407, 409. It is impossible to commit a greater offense without necessarily committing included offense. State v. Muise, App., 103 N.M. 382, 707 P.2d 1192, 1202. The defendant may be found guilty of an offense necessarily included in the offense charged. Fed.R.Crim.P. 31.

**Inclusionary approach.** Under the "inclusionary approach", evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show defendant's criminal propensity, as long as it is relevant to

some disputed issue in trial, and satisfies probative-prejudice balancing test. U.S. v. Brennan, C.A.N.Y., 798 F.2d 581, 589.

**Inclusio unius est exclusio alterius** /ìnklúwzh(iy)ow yanáyəs èst əksklúwzh(iy)ow òltəráyəs/. The inclusion of one is the exclusion of another. The certain designation of one person is an absolute exclusion of all others. Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325. This doctrine decrees that where law expressly describes particular situation to which it shall apply, an irrefutable inference must be drawn that what is omitted or excluded was intended to be omitted or excluded. Kevin McC v. Mary A, 123 Misc.2d 148, 473 N.Y.S.2d 116, 118.

**Inclusive.** Embraced; comprehended; comprehending the stated limits or extremes. Opposed to "exclusive."

**Inclusive survey.** In land law, one which includes within its boundaries large areas excepted from the computation of the area within such boundaries and excepted in the grant.

**Incognito.** Status of person who appears or travels without disclosing his true identity.

**Incola** /ínkələ/. Lat. In the civil law, an inhabitant; a dweller or resident. Properly, one who has transferred his domicile to any country.

**Incolas domicilium facit** /ínkələs dòməsíl(i)yəm féysət/. Residence creates domicile.

**Income.** The return in money from one's business, labor, or capital invested; gains, profits, salary, wages, etc.

The gain derived from capital, from labor or effort, or both combined, including profit or gain through sale or conversion of capital. Income is not a gain accruing to capital or a growth in the value of the investment, but is a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however invested or employed, and coming in, being derived, that is, received or drawn by the recipient for his separate use, benefit, and disposal. Goodrich v. Edwards, 255 U.S. 527, 41 S.Ct. 390, 65 L.Ed. 758. The true increase in amount of wealth which comes to a person during a stated period of time. That which comes in or is received from any business, or investment of capital, without references to outgoing expenditures. City of Fitzgerald v. Newcomer, 162 Ga.App. 646, 291 S.E.2d 766, 768.

*See also* Allocation of income; Blocked income; Clear reflection of income; Constructive receipt of income; Deferred income; Earned income; Earnings; Fixed income; Gross income; Income averaging; Income basis; Income in respect of decedent; Income tax; Net income; Net operating income; Personal income; Profit; Real income; Split income; Taxable income; and *Unearned income*, *below*.

**Accrued income.** Income earned during a certain accounting period but not received.

**Adjusted gross income.** The difference between the taxpayers' gross income and allowable adjustments. Adjustments include but are not limited to; contributions to an individual retirement account, alimony payments

**TENURE** 1470

to the use and profits in the soil, designated by the term "seisin," which is the highest interest a subject can acquire. Kavanaugh v. Cohoes Power & Light Corporation, 114 Misc. 590, 187 N.Y.S. 216, 231.

Wharton gives the following list of tenures which were ultimately developed:

### Lay Tenures

I. Frank tenement, or freehold. (1) The military tenures (abolished, except grand serjeanty, and reduced to free socage tenures) were: Knight service proper, or tenure in chivalry; grand serjeanty; cornage. (2) Free socage, or plow-service; either petit serjeanty, tenure in burgage, or gavelkind.

II. Villeinage. (1) Pure villeinage (whence copyholds at the lord's [nominal] will, which is regulated according to custom). (2) Privileged villeinage, sometimes called "villein socage" (whence tenure in ancient demesne, which is an exalted species of copyhold, held according to custom, and not according to the lord's will), and is of three kinds: Tenure in ancient demesne; privileged copyholds, customary freeholds, or free copyholds; copyholds of base tenure.

### Spiritual Tenures

I. Frankalmoigne, or free alms.

II. Tenure by divine service.

**Tenure by divine service.** Exists where an ecclesiastical corporation, sole or aggregate, holds land by a certain divine service; as, to say prayers on a certain day in every year, "or to distribute in almes to an hundred poore men an hundred pence at such a day."

**Tenured faculty.** Those members of a school's teaching staff who hold their position for life or until retirement. They may not be discharged except for cause.

**Term.** A word or phrase; an expression; particularly one which possesses a fixed and known meaning in some science, art, or profession.

A fixed and definite period of time; implying a period of time with some definite termination. First-Citizens Bank & Trust Co. v. Conway Nat. Bank, App., 282 S.C. 303, 317 S.E.2d 776, 778. Period of determined or prescribed duration. A specified period of time; e.g. term of lease, loan, contract, court session, public office, sentence.

In civil law, a space of time granted to a debtor for discharging his obligation.

Bounds, limitation, or extent of time for which an estate is granted; as when a man holds an estate for any limited or specific number of years, which is called his "term," and he himself is called, with reference to the term he so holds, the "termor," or "tenant of the term."

Word, phrase, or condition in a contract, instrument, or agreement which relates to a particular matter. U.C.C. § 1-201(42). See also Open price term.

When used with reference to a court, signifies the space of time during which the court holds a session. A session signifies the time during which the term when the court sits for the transaction of business, and the session commences when the court convenes for the term, and continues until final adjournment, either before or at the expiration of the term. The term of the court is the time prescribed by law during which it may be in session. The session of the court is the time of its actual sitting. But "term" and "session" are often used interchangeably. See also Session; and Term of court, below.

*General term.* A phrase used in some jurisdictions to denote the ordinary session of a court, for the trial and determination of causes, as distinguished from a special term, for the hearing of motions or arguments or the despatch of various kinds of formal business, or the trial of a special list or class of cases. Or it may denote a sitting of the court in banc.

*Regular term.* A term begun at the time appointed by law, and continued, in the discretion of the court, to such time as it may appoint, consistent with the law.

*Special term.* In court practice in certain states, that branch of the court which is held by a single judge for hearing and deciding in the first instance motions and causes of equitable nature is called the "special term," as opposed to the "general term," held by three judges (usually) to hear appeals.

Peculiar or unusual conditions imposed on a party before granting some application to the favor of the court.

*Term attendant on the inheritance.* See Attendant terms.

*Term bonds.* A bond issue whose component bonds all mature at the same time. Contrast with "serial bonds." See also Bond.

*Term fee.* In English practice, a certain sum which a solicitor is entitled to charge to his client, and the client to recover, if successful, from the unsuccessful party; payable for every term in which any proceedings subsequent to the summons shall take place.

*Term for deliberating.* The time given to the beneficiary heir, to examine if it be for his interest to accept or reject the succession which has fallen to him.

*Term for years.* An estate for years and the time during which such estate is to be held are each called a "term;" hence the term may expire before the time, as by a surrender.

*Term in gross.* A term of years is said to be either in gross (outstanding) or attendant upon the inheritance. It is outstanding, or in gross, when it is unattached or disconnected from the estate or inheritance, as where it is in the hands of some third party having no interest in the inheritance; it is attendant, when vested in some trustee in trust for the owner of the inheritance.

*Term life insurance.* See Insurance.

*Term loan.* A loan with a specified maturity date, as opposed to a demand loan which is due whenever the lender requests payment.

*Term of court.* The period of time prescribed by law during which a court holds session. The Supreme Court

422    423

**Definite.** Fixed, determined, defined, bounded.

**Definite sentence.** Sentence calling for imprisonment for specified number of years as contrasted with indeterminate sentence which leaves duration to prison authorities (*e.g.* parole boards) and good behavior of prisoner. Also called "determinate sentence".

**Definitio** /dèfənísh(iy)ow/. Lat. Definition; or more strictly, limiting or bounding; as in the maxim of the civil law: *Omnis definitio periculosa est, parum est enim ut non subverti possit, i.e.,* the attempt to bring the law within the boundaries of precise definitions is hazardous, as there are but few cases in which such a limitation cannot be subverted.

**Definition.** A description of a thing by its properties; an explanation of the meaning of a word or term. The process of stating the exact meaning of a word by means of other words. Such a description of the thing defined, including all essential elements and excluding all nonessential, as to distinguish it from all other things and classes. *See also* Define.

**Definitive.** That which finally and completely ends and settles a controversy. For example, a definitive sentence or judgment as opposed to an interlocutory judgment. *See* Definite sentence.

**Definitive sentence.** *See* Definite sentence.

**Deflation.** Decline in price of goods and services. *Compare* Disinflation.

**Deflect.** To turn aside, to deviate from a straight or horizontal line or from a proper position, to swerve.

**Defloration** /diyflɔréyshən/. Seduction or debauching. The act by which a woman is deprived of her virginity.

**Deforce.** In old English law, to withhold wrongfully; to withhold the possession of lands from one who is lawfully entitled to them. 3 Bl.Comm. 172.

**Deforcement.** Deforcement is where a man wrongfully holds lands to which another person is entitled. It therefore includes disseisin, abatement, discontinuance, and intrusion. But it is applied especially to cases, not falling under those heads, where the person entitled to the freehold has never had possession. 3 Bl.Comm. 172. Also, to detain dower from widow.

**Deforciant** /diyfórshənt/. One who wrongfully keeps the owner of lands and tenements out of the possession of them. 2 Bl.Comm. 350.

**Deforciare** /dəfòrs(h)iyéəriy/. L. Lat. To withhold lands or tenements from the rightful owner. This is a word of art which cannot be supplied by any other word.

**Deforciatio** /dəfòrs(h)iyéysh(iy)ow/. L. Lat. In old English law, a distress, distraint, or seizure of goods for satisfaction of a lawful debt.

**De forisfactura maritagii** /diy fòrəsfækchúrə mærətéyliyay/. Writ of forfeiture of marriage.

**Deformity.** A deformed or misshapen condition; an unnatural growth, or a distorted or misshapen part or member; disfigurement, as a bodily deformity.

**Defossion** /dəfóshən/. The punishment of being buried alive.

**De frangentibus prisonam** /diy frænjéntəbəs prízanəm/. Concerning those that break prison. The title of the English statute 1 Edw. II, ordaining that none from thenceforth who broke prison should have judgment of life or limb for breaking prison only, unless the cause for which he was taken and imprisoned required such a judgment as he was lawfully convicted thereof.

**Defraud.** To make a misrepresentation of an existing material fact, knowing it to be false or making it recklessly without regard to whether it is true or false, intending one to rely and under circumstances in which such person does rely on to his damage. To practice fraud; to cheat or trick. To deprive a person of property or any interest, estate, or right by fraud, deceit, or artifice. *See also* Collusion; Deceit; Fraud; Material fact; Misrepresentation.

*Intent to defraud* means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property.

**Defraudation.** Privation by fraud.

**Defunct.** Having ceased to exist; no longer operative. Deceased; a deceased person. A business which has ceased to function.

**Defunctus** /dəfəŋ(k)təs/. Lat. Dead. "Defunctus sine prole," dead without (leaving) issue.

**De furto** /diy fɔ́rtow/. Of theft. One of the kinds of criminal appeal formerly in use in England.

**Degaster** /dèygǽstér/. L. Fr. To waste.

**De gestu et fama** /diy jéstyuw ət féymə/. Of behavior and reputation. An old writ which lay in cases where a person's conduct and reputation were impeached.

**Degradation.** A deprivation of dignity; dismissal from rank or office; act or process of degrading. Moral or intellectual decadence; degeneration; deterioration.

An ecclesiastical censure, whereby a clergyman is divested of his holy orders. There are two sorts by the canon law,—one *summary,* by word only; the other *solemn,* by stripping the party degraded of those ornaments and rights which are the ensigns of his degree. Degradation is otherwise called "deposition," but the canonists have distinguished between these two terms, deeming the former as the greater punishment of the two. There was likewise a degradation of a lord or knight at common law, and also by act of parliament.

**Dégradations** /dègrədéyshənz/. A term for waste in the French law.

**Degrade.** *See* Degradation.

**Degrading.** Reviling; holding one up to public obloquy; lowering a person in the estimation of the public; exposing to disgrace, dishonor, or contempt.

**De gratia** /diy gréysh(iy)ə/. Of grace or favor, by favor. *De speciali gratia,* of special grace or favor.

(34)

# DEFICIENCY ASSESSMENT

**Deficiency assessment.** In taxation, the excess of the amount of tax computed by the Internal Revenue Service over the amount computed by the taxpayer. I.R.C. § 6211 et seq. *See also* Deficiency; Deficiency notice; Jeopardy assessment.

**Deficiency bill.** In parliamentary practice, an appropriation bill covering items of expense omitted from the general appropriation bill or bills, or for which insufficient appropriations were made. If intended to cover a variety of such items, it is commonly called a "general deficiency bill"; if intended to make provision for expenses which must be met immediately, or which cannot wait the ordinary course of the general appropriation bills, it is called an "urgent deficiency bill."

**Deficiency dividends.** *See* Dividend.

**Deficiency judgment.** In mortgage law, imposition of personal liability on mortgagor for unpaid balance of mortgage debt after foreclosure has failed to yield full amount of due debt. In re Pittsburgh-Duquesne Development Co., C.A.Pa., 482 F.2d 243, 246. If a foreclosure sale yields less than the mortgage debt, most states permit the mortgagee to obtain a judgment for the difference. Such deficiency judgments are subject, however, to a substantial amount of statutory regulation. May also apply to debt due after repossession of personal property subject to security interest. *See also* Judgment.

**Deficiency notice.** Notice of tax deficiency (90 day letter) which is mailed to taxpayer by I.R.S. and which is prerequisite to jurisdiction of Tax Court. I.R.C. § 6212. *See also* Ninety day letter.

**Deficiency suits.** In mortgage law, action to recover difference between debt and amount realized on foreclosure. *See also* Deficiency judgment.

**Deficit.** An excess of expenditures over revenues. Excess of liabilities and debts over income and assets. A negative balance in the earnings and profits account. Financial loss in operation of business. Something wanting, generally in the accounts of one intrusted with money, or in the money received by him. The term is broad enough to cover defalcation, misappropriation, shrinkage, or costs, and, in its popular meaning, signifies deficiency from any cause.

In accounting, opposite of surplus on the balance sheet. May represent accumulated losses. A negative balance in the earnings and profits account.

**Deficit spending.** Expenditures in excess of income; usually from borrowed funds rather than from actual revenues or surplus.

**De fide et officio judicis non recipitur quæstio, sed de scientia, sive sit error juris, sive facti** /diy fáydiy èt ɔfíshiyow júwdəsəs nòn rəsípɔtər kwés(h)t(iy)ow, sèd dìy sayénsh(iy)ə, sáyviy sìt éhrər júrəs sáyviy fæktay/. Concerning the fidelity and official conduct of a judge, no question is [will be] entertained; but [only] concerning his knowledge, whether the error [committed] be of law or of fact. The *bona fides* and honesty of purpose of a judge cannot be questioned, but his decision may be

impugned for error either of law or fact. The law doth so much respect the certainty of judgments, and the credit and authority of judges, that it will not permit any error to be assigned which impeacheth them in their *trust* and *office*, and in willful abuse of the same; but only in ignorance and mistaking either of the law, or of the case and matter of fact. Thus, it cannot be assigned for error that a judge did that which he ought not to do; as that he entered a verdict for the plaintiff, where the jury gave it for the defendant.

**De fidei læsione** /diy fáydiay liyz(h)iyówniy/. Of breach of faith or fidelity.

**Defile.** To corrupt purity or perfection of; to debase; to make ceremonially unclean; to pollute; to sully; to dishonor. State v. Kashett, 30 Ohio App.2d 77, 283 N.E.2d 636, 638. To debauch, deflower, or corrupt the chastity of a woman. The term does not necessarily imply force or ravishment, nor does it connote previous immaculateness. *See also* Desecrate.

**Defilement** /dəfáylmənt/. Uncleanness; impurity; corruption of morals or conduct.

**Define.** To explain or state the exact meaning of words and phrases; to state explicitly; to limit; to determine essential qualities of; to determine the precise signification of; to settle; to establish or prescribe authoritatively; to make clear. Walling v. Yeakley, C.C.A.Colo., 140 F.2d 830, 832. To declare that a certain act shall constitute an offense is defining that offense. U. S. v. Arjona, 120 U.S. 479, 7 S.Ct. 628, 30 L.Ed. 728. *See also* Definition.

To "define" with respect to space, means to set or establish its boundaries authoritatively; to mark the limits of; to determine with precision or to exhibit clearly the boundaries of; to determine the end or limit; to fix or establish the limits. It is the equivalent to declare, fix or establish. Seeking out what exists already is not "defining." Redlands Foothill Groves v. Jacobs, D.C.Cal., 30 F.Supp. 995, 1004.

**De fine force** /diy fáyniy fórs/. L. Fr. Of necessity; pure necessity. *See* Fine-force.

**De fine non capiendo pro pulchre placitando** /diy fáyniy nòn kæpiyéndow pròw pólkriy plæsətǽndow/. A writ prohibiting the taking of fines for beau pleader.

**De fine pro redisseisina capiendo** /diy fáyniy pròw riydəsíyzənə kæpiyéndow/. A writ which lay for the release of one imprisoned for a re-disseisin, on payment of a reasonable fine.

**De finibus levatis** /diy fáynəbəs ləvéytəs/. Concerning fines levied. The title of the English statute 27 Edw. I, requiring fines thereafter to be levied, to be read openly and solemnly in court.

**Definite.** Fixed, d

**Definite sentence** for specified numb minate sentence w ities (*e.g.* parole b Also called "deter

**Definitio** /défənís strictly, limiting o civil law: *Omnis c ut non subverti po* within the bound ous, as there are tion cannot be sul

**Definition.** A de an explanation of process of stating of other words. S including all essen sential, as to dist classes. *See also*

**Definitive.** That settles a controve tence or judgment ment. *See* Definit

**Definitive senten**

**Deflation.** Declin *pare* Disinflation.

**Deflect.** To turn horizontal line or

**Defloration** /diyfl The act by which

**Deforce.** In old E withhold the posse ly entitled to ther

**Deforcement.** De holds lands to w therefore includes and intrusion. B falling under thos the freehold has n Also, to detain do

**Deforciant** /diyfó the owner of land of them. 2 Bl.Co

**Deforciare** /dəfòrs or tenements from art which cannot

**Deforciatio** /dəfòr lish law, a distre satisfaction of a l

**De forisfactura m** jiyay/. Writ of fo

**Deformity.** A de unnatural growth member; disfigure



justified or that other circumstances make an award of expenses unjust.

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).

[(e) SUBPOENA OF PERSON IN FOREIGN COUNTRY.] (Abrogated Apr. 29, 1980, eff. Aug. 1, 1980)

[(f) EXPENSES AGAINST UNITED STATES.] (Repealed Oct. 21, 1980, eff. Oct. 1, 1981)

(g) FAILURE TO PARTICIPATE IN THE FRAMING OF A DISCOVERY PLAN. If a party or a party's attorney fails to participate in good faith in the development and submission of a proposed discovery plan as required by Rule 26(f), the court may, after opportunity for hearing, require such party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Mar. 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Oct. 21, 1980, eff. Oct. 1, 1981; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000.)

## VI. TRIALS

### Rule 38. Jury Trial of Right

(a) RIGHT PRESERVED. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

(b) DEMAND. Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue, and (2) filing the demand as required by Rule 5(d). Such demand may be indorsed upon a pleading of the party.

(c) SAME: SPECIFICATION OF ISSUES. In the demand a party may specify the issues which the party wishes so tried; otherwise the party shall be deemed to have demanded trial by jury for all the issues so triable. If the party has demanded trial by jury for only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

(d) WAIVER. The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

(e) ADMIRALTY AND MARITIME CLAIMS. These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h).

(As amended Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993.)



(Cite as: 253 U.S. 245, 40 S.Ct. 550)

253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887, 11 A.L.R. 519, 1 USTC P 36, 3 A.F.T.R. 3078

Supreme Court of the United States

EVANS

v.

GORE, Acting Collector of Internal Revenue.

No. 654.

Argued March 5, 1920.

Decided June 1, 1920.

In Error to the District Court of the United States for the Western District of Kentucky. Action by Walter Evans against J. Rogers Gore, Acting Collector, etc. Judgment for defendant (262 Fed. 550), and plaintiff brings error. Reversed.

West Headnotes

KeyCite Notes 

⇐⇒92 Constitutional Law
⇐⇒92II Construction, Operation, and Enforcement of Constitutional Provisions
⇐⇒92k11 General Rules of Construction
⇐⇒92k18 k. Relation to Former or Other Constitutions or Statutes. Most Cited Cases

Unless there is some real conflict between U.S.C.A.Const. art. 3, § 1, providing that the compensation of judges shall not be diminished during their continuance in office, and Amendment 16, relative to the taxation of income, effect must be given to both.

KeyCite Notes

⇐⇒92 Constitutional Law
⇐⇒92II Construction, Operation, and Enforcement of Constitutional Provisions
⇐⇒92k11 General Rules of Construction
⇐⇒92k18 k. Relation to Former or Other Constitutions or Statutes. Most Cited Cases

It is not lightly to be assumed that, in adopting the Sixteenth Amendment, U.S.C.A., there was any purpose to depart from or imperil a constitutional principle so widely extended and so vital to the system of government as the independence of the judiciary.

KeyCite Notes

⇐⇒220 Internal Revenue
⇐⇒220V Income Taxes
⇐⇒220V(E) Salaries, Wages or Compensation

⟸220k3150 k. In General. <u>Most Cited Cases</u>
    (Formerly 220k30)

<u>U.S.C.A.Const. Amend. 16</u>, authorizing Congress to collect taxes on incomes, from whatever source derived, without apportionment, among the states, does not extend the taxing power to new or excepted subjects, but merely removes all occasion otherwise existing for an apportionment and hence does not authorize a tax on the salary of a federal judge, contrary to <u>article 3, § 1</u>.



<u>KeyCite Notes</u>

⟸<u>220</u> Internal Revenue
  ⟸<u>220V</u> Income Taxes
    ⟸<u>220V(E)</u> Salaries, Wages or Compensation
      ⟸<u>220k3150</u> k. In General. <u>Most Cited Cases</u>
        (Formerly 220k347)

Apart from his salary, a federal judge is taxable on his income or property the same as any other person.



<u>KeyCite Notes</u>

⟸<u>227</u> Judges
  ⟸<u>227III</u> Rights, Powers, Duties, and Liabilities
    ⟸<u>227k22</u> Compensation and Fees
      ⟸<u>227k22(7)</u> k. Change in Amount During Term of Office. <u>Most Cited Cases</u>

<u>U.S.C.A.Const. art. 3, § 1</u>, providing that judges shall receive a compensation which shall not be diminished during their continuance in office, imposes such limitation in the public interest and not for the benefit of the judges, and must be construed in accord with its spirit and the principle on which it proceeds, and not restrictively.



<u>KeyCite Notes</u>

⟸<u>227</u> Judges
  ⟸<u>227III</u> Rights, Powers, Duties, and Liabilities
    ⟸<u>227k22</u> Compensation and Fees
      ⟸<u>227k22(7)</u> k. Change in Amount During Term of Office. <u>Most Cited Cases</u>

<u>U.S.C.A.Const. art. 3, § 1</u>, providing that the compensation of judges shall not be diminished during their continuance in office, prohibits anything, the necessary operation and effect of which is to withhold or take from the judge a part of that which has been promised by law for his services.



<u>KeyCite Notes</u>

⟸<u>227</u> Judges
  ⟸<u>227III</u> Rights, Powers, Duties, and Liabilities
    ⟸<u>227k22</u> Compensation and Fees

227k22(7) k. Change in Amount During Term of Office. <u>Most Cited Cases</u>

Act Feb. 24, 1919, § 213, 40 Stat. 1062, c. 18, so far as it imposes a tax on the income of judges of the courts of the United States, including their salaries, violates <u>U.S.C.A. Const. art. 3, § 1</u>, providing that the compensation of judges shall be diminished during their continuance in office, and the fact that the income of other persons is likewise taxed does not validate the tax.



<u>KeyCite Notes</u>

<u>227</u> Judges
  <u>227IV</u> Disqualification to Act
    <u>227k41</u> Pecuniary Interest
      <u>227k42</u> k. In General. <u>Most Cited Cases</u>

The Supreme Court cannot decline or renounce jurisdiction to rereview the judgment in an action involving the question as to the power of Congress to tax the income of a federal judge including his salary, because of the individual relation of the members of the court to such question.
**550

──────────── (Cite as: 253 U.S. 245, 40 S.Ct. 550, **550) ────────────

*246

──────────── (Cite as: 253 U.S. 245, *246, 40 S.Ct. 550, **550) ────────────

Messrs. William Marshall Bullitt and Edmund F. Trabue, both of Louisville, Ky., for plaintiff in error.
Mr. Assistant Attorney General Frierson, for defendant in error.

Mr. Justice VAN DEVANTER delivered the opinion of the Court.
This is an action to recover money paid under protest as a tax alleged to be forbidden by the Constitution.
The plaintiff is the United States District Judge for the Western District of Kentucky, and holds that office under an appointment by the President made in 1899 with the advice and consent of the Senate. The tax which he calls in question was levied under the act of February 24, 1919, c. 18, 40 Stat. 1062, on his net income for the year 1918, as computed under that act. His compensation or salary as District Judge was included in the computation. Had it been excluded he would not have called on to pay any income tax for that year. The inclusion was in obedience to a provision in section 213 (Comp. St. Ann. Supp. 1919, § 6336 1/8 ff), requiring the computation to embrace all gains, profits, income and the like, 'including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States [and others] * * * the compensation received as such.' Whether he could be subjected to such a tax in
*247

──────────── (Cite as: 253 U.S. 245, *247, 40 S.Ct. 550, **550) ────────────

respect of his salary, consistently with the Constitution, is the matter in issue. If it be resolved against the tax he will be entitled to recover what he paid; otherwise his action must fail. It did fail in the District Court. <u>262 Fed. 550.</u>
**551

——————————— (Cite as: 253 U.S. 245, *247, 40 S.Ct. 550, **551) ———————————

The Constitution establishes three great co-ordinate departments of the national government--the legislative, the executive, and the judicial--and distributes among them the powers confided to that government by the people. Each department is dealt with in a separate article, the legislative in the first, the executive in the second and the judicial in the third. Our present concern is chiefly with the third article. It defines the judicial power, vests it in one Supreme Court and such inferior courts as Congress may from time to time ordain and establish, and declares:

'The judges, both of the Supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office.'

The plaintiff insists that the provision in section 213 which subjects him to a tax in respect of his compensation as a judge by its necessary operation and effect diminishes that compensation and therefore is repugnant to the constitutional limitation just quoted.

[1] Stated in its broadest aspect, the contention involves the power to tax the compensation of federal judges in general, and also the salary of the President, as to which the Constitution (article 2, § 1, cl. 6) contains a similar limitation. Because of the individual relation of the members of this court to the question, thus broadly stated, we cannot but regret that its solution falls to us; and this although each member has been paying the tax in respect of his salary voluntarily and in regular course. But jurisdiction of the present case cannot be declined or renounced. The plaintiff was entitled by law to invoke our *248

——————————— (Cite as: 253 U.S. 245, *248, 40 S.Ct. 550, **551) ———————————

decision on the question as respects his own compensation, in which no other judge can have any direct personal interest; and there was no other appellate tribunal to which under the law he could go. He brought the case here in due course, the government joined him in asking an early determination of the question involved, and both have been heard at the bar and through printed briefs. In this situation, the only course open to us is to consider and decide the cause--a conclusion supported by precedents reaching back many years. Moreover, it appears that, when this taxing provision was adopted, Congress regarded it as of uncertain constitutionality and both contemplated and intended that the question should be settled by us in a case like this._[FN1]

FN1 See House Report, No. 767, p. 29 65th Cong., 2d Sess.; Senate Report, No. 617, p. 6, 65th Cong. 3d Sess. And see Cong. Record vol. 56, p. 10370, where the Chairman of the House Committee, in asking the adoption

of the provision, said: 'I wish to say, Mr. Chairman, that while there is considerable doubt as to the constitutionality of taxing * * * federal judges' or the President's salaries, * * * we cannot settle it; we have not the power to settle it. No power in the world can settle it except the Supreme Court of the United States. Let us raise it, as we have done, and let it be tested, and it can only be done by some one protesting his tax and taking an appeal to the Supreme Court.' And again: 'I think really that every man who has a doubt about this can very well vote for it and take the advice of the gentleman from Pennsylvania [Mr. Graham], which was sound then and is sound now, that this question ought to be raised by Congress, the only power that can raise it, in order that it may be tested in the Supreme Court, the only power that can decide it.'

With what purpose does the Constitution provide that the compensation of the judges 'shall not be diminished during their continuance in office?' Is it primarily to benefit the judges, or rather to promote the public weal by giving them that independence which

makes for an impartial and courageous discharge of the judicial function? Does the provision merely forbid direct diminution, such *249

─────────── (Cite as: 253 U.S. 245, *249, 40 S.Ct. 550, **551) ───────────

as expressly reducing the compensation from a greater to a less sum per year, and thereby leave the way open for indirect, yet effective, diminution, such as withholding or calling back a part as a tax on the whole? Or, does it mean that the judge shall have a sure and continuing right to the compensation, whereon he confidently may rely for his support during his continuance in office, so that he need have no apprehension lest his situation in this regard may be changed to his disadvantage?

The Constitution was framed on the fundamental theory that a larger measure of liberty and justice would be assured by vesting the three great powers, the legislative, the executive, and the judicial, in separate departments, each relatively independent of the others; and it was recognized that without this independence--if it was not made both real and enduring--the separation would fail of its purpose. All agreed that restraints and checks must be imposed to secure the requisite measure of independence; for otherwise the legislative department, inherently the strongest, might encroach on or even come to dominate the others, and the judicial, naturally the weakest, might be dwarfed or swayed by the other two, especially by the legislative.

The particular need for making the judiciary independent was elaborately pointed out by Alexander Hamilton in the Federalist, No. 78, from which we excerpt the following:

'The executive not only dispenses the honors, but holds the sword of the community. The Legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen are to be regulated. The judiciary, on the contrary, has no influence over either the sword or the purse; no direction either of the strength or of the wealth of the society; and can take no active resolution whatever. It may truly be said to have neither force nor will, but merely judgment. * * * **552

─────────── (Cite as: 253 U.S. 245, *249, 40 S.Ct. 550, **552) ───────────

This simple view of *250

─────────── (Cite as: 253 U.S. 245, *250, 40 S.Ct. 550, **552) ───────────

the matter suggests several important consequences. It proves incontestably that the judiciary is beyond comparison the weakest of the three departments of power; that it can never attack with success either of the other two; and that all possible care is requisite to enable it to defend itself against their attacks.'

'The complete independence of the courts of justice is peculiarly essential in a limited Constitution. By a limited Constitution I understand one which contains certain specified exceptions to the legislative authority; such, for instance, as that it shall pass no bills of attainder, no ex post facto laws, and the like. Limitations of this kind can be preserved in practice no other way than through the medium of courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing.'

At a later period John Marshall, whose rich experience as lawyer, legislator, and Chief Justice enabled him to speak as no one else could, tersely said (Debates Va. Conv. 1829-1831, pp. 616, 619):

'Advert, sir, to the duties of a judge. He has to pass between the government and the man whom that government is prosecuting; between the most powerful individual in the community, and the poorest and most unpopular. It is of the last importance, that in the exercise of these duties he should observe the utmost fairness. Need I press the necessity of this? Does not every man feel that his own personal security and the security of his property depends on that fairness? The judicial department comes home

in its effects to every man's fireside: it passes on his property, his reputation, his life, his all. Is it not to the last degree important that he should be rendered perfectly and completely independent, with nothing to influence or control him but God and his conscience? * * * I have always thought, from my earliest youth till now, that the *251

────────── (Cite as: 253 U.S. 245, *251, 40 S.Ct. 550, **552) ──────────

greatest scourge an angry Heaven ever inflicted upon an ungrateful and a sinning people was an ignorant, a corrupt, or a dependent judiciary.'

More recently the need for this independence was illustrated by Mr. Wilson, now the President, in the following admirable statement:

'It is also necessary that there should be a judiciary endowed with substantial and independent powers and secure against all corrupting or perverting influences; secure, also, against the arbitrary authority of the administrative heads of the government.

'Indeed there is a sense in which it may be said that the whole efficacy and reality of constitutional government resides in its courts. Our definition of liberty is that it is the best practicable adjustment between the powers of the government and the privileges of the individual.'

'Our courts are the balance wheel of our whole constitutional system; and ours is the only constitutional system so balanced and controlled. Other constitutional systems lack complete poise and certainty of operation because they lack the support and interpretation of authoritative, undisputable courts of law. It is clear beyond all need of exposition that for the definite maintenance of constitutional understandings it is indispensable, alike for the preservation of the liberty of the individual and for the preservation of the integrity of the powers of the government, that there should be some nonpolitical forum in which those understandings can be impartially debated and determined. That forum our courts supply. There the individual may assert his rights; there the government must accept definition of its authority. There the individual may challenge the legality of governmental action and have it adjudged by the test of fundamental principles, and that test the government must abide; there the government can check the too aggressive self-assertion of the individual and establish its power upon lines which all *252

────────── (Cite as: 253 U.S. 245, *252, 40 S.Ct. 550, **552) ──────────

can comprehend and heed. The constitutional powers of the courts constitute the ultimate safeguard alike of individual privilege and of governmental prerogative. It is in this sense that our judiciary is the balance wheel of our entire system; it is meant to maintain that nice adjustment between individual rights and governmental powers which constitutes political liberty.'

Constitutional Government in the United States, pp. 17, 142.

Conscious of the nature and scope of the power being vested in the national courts, recognizing that they would be charged with responsibilites more delicate and important than any ever before confided to judicial tribunals, and appreciating that they were to be, in the words of George Washington, [FN2] 'the keystone of our political fabric,' the convention with unusual accord incorporated in the Constitution the provision that the judges 'shall hold their offices during good behavior and shall at stated times receive for their services a compensation which shall not be diminished during their continuance in office.' Can there be any doubt that the two things thus coupled in place-- the clause in respect of tenure during good behavior and that in respect of an undiminishable compensation--were equally coupled in purpose? And is it not plain that their purpose was to invest the judges with an independence in keeping with the delicacy and importance of their task and with the imperative need for its impartial and fearless performance? Mr. Hamilton said in explanation and support of the provision (Federalist, No. 79):

<u>FN2</u> Sparks' Washington, vol. 10, pp. 35, 36.

'Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support. * * * In the general course of human nature, *a power over a man's subsistence amounts to a power over his will*. * * * The enlightened friends of good government in every state **\*\*553**

——————————————— (Cite as: 253 U.S. 245, \*252, 40 S.Ct. 550, \*\*553) ———————————

have seen cause to lament the want of precise and explicit precautions in **\*253**

——————————————— (Cite as: 253 U.S. 245, \*253, 40 S.Ct. 550, \*\*553) ———————————

the state constitutions on this head. Some of these indeed have declared that *permanent* salaries should be established for the judges; but the experiment has in some instances shown that such expressions are not sufficiently definite to preclude legislative evasions. Something still more positive and unequivocal has been evinced to be requisite. * * * This provision for the support of the judges bears every mark of prudence and efficacy; and it may be safely affirmed that, together with the permanent tenure of their offices, it affords a better prospect of their independence than is discoverable in the Constitutions of any of the states in regard to their own judges.' The several commentators on the Constitution have adopted and reiterated this view, [FN3] Judge Story adding:

<u>FN3</u> 2 Story, § 1628; 1 Kent's Com. \*294; 1 Wilson's Works, 410, 411; 2 Tucker, § 364; Miller, 340-343; 1 Carson's Supreme Court, 6.

'Without this provision [as to an undiminishable compensation], the other, as to the tenure of office, would have been utterly nugatory, and indeed a mere mockery' and Chancellor Kent observing:
'It tends, also, to secure a succession of learned men on the bench, who, in consequence of a certain undiminished support, are enabled and induced to quit the lucrative pursuits of private business for the duties of that important station.'
[2] These considerations make it very plain, as we think, that the primary purpose of the prohibition against diminution was not to benefit the judges, but, like the clause in respect of tenure, to attract good and competent men to the bench and to promote that independence of action and judgment which is essential to the maintenance of the guaranties, limitations, and pervading principles of the Constitution and to the administration of justice without respect to persons and with equal concern for the poor and the rich. Such being its purpose, it is to be construed, not as a private grant, but as a limitation imposed in the public interest; in other words, not restrictively, but in **\*254**

——————————————— (Cite as: 253 U.S. 245, \*254, 40 S.Ct. 550, \*\*553) ———————————

accord with its spirit and the principle on which it proceeds.
[3][4] Obviously, diminution may be effected in more ways than one. Some may be direct and others indirect, or even evasive as Mr. Hamilton suggested. But all which by their necessary operation and effect withhold or take from the judge a part of that which has been promised by law for his services must be regarded as within the prohibition. Nothing short of this will give full effect to its spirit and principle. Here the plaintiff was paid the full compensation, but was subjected to an involuntary obligation to pay back a part, and the obligation was promptly enforced. Of what avail to him was the part which was paid with one hand and then taken back with the other? Was he not placed in practically the same situation as if it had been withheld in the first instance? Only by

subordinating substance to mere form could it be held that his compensation was not diminished. Of course, the conclusion that it was diminished is the natural one. This is illustrated in Dobbins v. Commissioners of Erie County, 16 Pet. 435, 450, 10 L. Ed. 1022, which involved a tax charged under a law of Pennsylvania against a revenue officer of the United States who was a citizen and resident of that state. The tax was adjusted or proportioned to his compensation, and the state court sustained it. Erie County Com'rs v. Dobbins, 7 Watts (Pa.) 513. In reversing that decision, this court, after showing that the compensation had been fixed by a law of Congress said:

'Does not a tax, then, by a state upon the office, diminisning the recompense, conflict with the law of the United States, which secures it to the officer in its entireness? It certainly has such an effect; and any law of a state imposing such a tax cannot be constitutional.'

But it is urged that what the plaintiff was made to pay back was an income tax, and that a like tax was exacted or others engaged in private employment.

If the tax in respect of his compensation be prohibited, *255

──────────── (Cite as: 253 U.S. 245, *255, 40 S.Ct. 550, **553) ────────────

it can find no justification in the taxation of other income as to which there is no prohibition; for, of course, doing what the Constitution permits gives no license to do what it prohibits.

The prohibition is general, contains no excepting words, and appears to be directed against all diminution, whether for one purpose or another; and the reasons for its adoption, as publicly assigned at the time and commonly accepted ever since, make with impelling force for the conclusion that the fathers of the Constitution intended to prohibit diminution by taxation as well as otherwise--that they regarded the independence of the judges as of far greater importance than any revenue that could come from taxing their salaries.

True, the taxing power is comprehensive and acknowledges few exceptions. But that there are exceptions, besides the one we here recognize and sustain, is well settled. In Collector v. Day, 11 Wall. 113, 20 L. Ed. 122, it was held that Congress could not impose an income tax in respect of the salary of a judge of a state court; in Pollock v. Farmers' Loan & Trust Co., 157 U. S, 429, 585, 601, 652, 653, 15 Sup. Ct. 673, 39 L. Ed. 759, it was held--the full court agreeing on this point--that Congress was without power to impose such a tax in respect of interest received from bonds issued by a state or any of its counties or municipalities; and in United States v. Railroad Co., 17 Wall. 322, 21 L. Ed. 597, there was a like holding as to municipal **554

──────────── (Cite as: 253 U.S. 245, *255, 40 S.Ct. 550, **554) ────────────

revenues derived by the city of Baltimore from its ownership of stock in a railroad company. None of those decisions was put on any express prohibition in the Constitution, for there is none; but all recognize and gave effect to a prohibition implied from the independence of the states within their own spheres.

When we consider, as was done in those cases, what is comprehended in the congressional power to tax--where its exertion is not directly or impliedly interdicted--it becomes additionally manifest that the prohibition now *256

──────────── (Cite as: 253 U.S. 245, *256, 40 S.Ct. 550, **554) ────────────

under discussion was intended to embrace and prevent diminution through the exertion of that power; for, as this court repeatedly has held, the power to tax carries with it 'the power to embarrass and destroy'; may be applied to every object within its range 'in such measure as Congress may determine'; enables that body 'to select one calling and omit another, to tax one class of property and to forbear to tax another'; and may be applied in different ways to different objects so long as there is 'geographical uniformity'

in the duties, imposts and excises imposed. McCulloch v. Marland, 4 Wheat. 316, 431, 4 L. Ed. 579; Pacific Insurance Co. v. Soule, 7 Wall. 433, 443, 19 L. Ed. 95; Austin v. The Aldermen, 7 Wall. 694, 699, 19 L. Ed. 224; Veazie Bank v. Fenno, 8 Wall. 533, 541, 548, 19 L. Ed. 482; Knowlton v. Moore, 178 U. S. 41, 92, 106, 20 Sup. Ct. 747, 44 L. Ed. 969; Treat v. White, 181 U. S. 264, 268, 269, 21 Sup. Ct. 611, 45 L. Ed. 853; McCray v. United States, 195 U. S. 27, 61, 24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; Flint v. Stone Tracy Co., 220 U. S. 107, 158, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Billings v. United States, 232 U. S. 261, 282, 34 Sup. Ct. 421, 58 L. Ed. 596; Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 24-26, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414. Is it not therefore morally certain that the discerning statesmen who framed the Constitution and were so sedulously bent on securing the independence of the judiciary intended to protect the compensation of the judges from assault and diminution in the name or form of a tax? Could not the purpose of the prohibition be wholly thwarted if this avenue of attack were left open? Certainly there is nothing in the words of the prohibition indicating that it is directed against one legislative power and not another; and in our opinion due regard for its spirit and principle requires that it be taken as directed against them all.

This view finds support in rulings in Pennsylvania, Louisiana, and North Carolina, made under like constitutional restrictions, Commonwealth ex rel. v. Mann. 5 Watts & S. (Pa.) 403, 415, et seq.; [FN4] *257

───────────── (Cite as: 253 U.S. 245, *257, 40 S.Ct. 550, **554) ─────────────

New Orleans v. Lea, 14 La. Ann. 197; 48 N. C. Appendix; N. C. Public Documents 1899, Doc. No. 8, p. 95; In re Taxation of Salaries of Judges, 131 N. C. 692, 42 S. E. 970; Purnell v. Page, 133 N. C. 125, 45 S. E. 534; and has strong sanction in the actual practice of the government, to which we now advert.

FN4 The tax condemned was levied under a provision, in a general revenue law, charging a tax of 2 per cent. 'upon all salaries and emoluments of office, created or held by or under the Constitution or laws of this commonwealth, and by or under any incorporation, institution or company incorporated by the said commonwealth, where such salaries or emoluments exceed two hundred dollars.' Act No. 232, § 2, Penn. Laws 1840, p. 613; Act No. 117, § 9, Penn. Laws 1841, p. 310.

No attempt was made to tax the compensation of federal judges prior to 1862. A statute of that year, chapter 119, § 86, 12 Stat. 472, with its amendments, subjected the salaries of all civil officers of the United States to an income tax of 3 per cent. and was construed by the revenue officers as including the compensation of the President and the judges. Chief Justice Taney, the head of the judiciary, wrote to the Secretary of the Treasury a letter of protest (157 U. S. 701), based on the prohibition we are considering, and in the course of the letter said:

'The act in question, as you interpret it, diminishes the compensation of every judge three per cent. and if it can be diminished to that extent by the name of a tax, it may in the same way be reduced from time to time at the pleasure of the Legislature.

'The judiciary is one of the three great departments of the government, created and established by the Constitution. Its duties and powers are specifically set forth, and are of a character that requires it to be perfectly independent of the two other departments, and in order to place it beyond the reach and above even the suspicion of any such influence, the power to reduce their compensation is expressly withheld from Congress, and excepted from their powers of legislation.

'Language could not be more plain than that used in *258

───────────── (Cite as: 253 U.S. 245, *258, 40 S.Ct. 550, **554) ─────────────

the Constitution. It is moreover one of its most important and essential provisions. For the articles which limit the powers of the legislative and executive branches of the government, and those which provide safeguards for the protection of the citizen in his person and property, would be of little value without a judiciary to uphold and maintain them, which was free from every influence, direct or indirect, that might by possibility in times of political excitement warp their judgments.

'Upon these grounds I regard an act of Congress retaining in the Treasury a portion of the compensation of the judges, as unconstitutional and void.'

The collection of the tax proceeded, and, at the suggestion of the Chief Justice, this court ordered his protest spread on its records. In 1869 the Secretary of the Treasury referred the question to the Attorney General (Judge Hoar), and that officer rendered an opinion in substantial accord with Chief Justice Taney's protest, and also advised that the tax on the President's compensation was likewise **555**

──────────── (Cite as: 253 U.S. 245, *258, 40 S.Ct. 550, **555) ────────────

invalid. 13 Op. A. G. 161. The tax on the compensation of the President and the judges was then discontinued, and the amounts theretofore collected were all refunded--a part through administrative channels and a part through the action of the Court of Claims and ensuing appropriations by Congress. Wayne v. United States, 26 Ct. Cl. 274; chapter 311, 27 Stat. 306. Thus the Secretary of the Treasury, the accounting officers, the Court of Claims and Congress accepted and gave effect to the view expressed by the Attorney General. In the Income Tax Act of 1894, c. 349, § 27 et seq., 28 Stat. 509, nothing was said about the compensation of the judges; but Mr. Justice Field regarded it as included and gave that as one reason for joining in the decision holding the act unconstitutional. 157 U. S. 604-606, 15 Sup. Ct. 673, 39 L. Ed. 759. On the rehearing the Attorney General (Mr. Olney) frankly said in his brief:

'There has never been a doubt since the opinion of Attorney General Hoar *259

──────────── (Cite as: 253 U.S. 245, *259, 40 S.Ct. 550, **555) ────────────

that the salaries of the President and judges were exempt.'

The income tax acts of 1913, 1916, and 1917 (chapter 16, 38 Stat. 168; chapter 463, 39 Stat. 758, § 4 [Comp. St. § 6336d] chapter 63, 40 Stat. 329 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336d]) severally excepted the compensation of the judges then in office--also that of the President for the then current term. In short, during a period of more than 120 years there was but a single real attempt to tax the judges in respect of their compensation, and that attempt soon was disapproved and pronounced untenable by the concurring action of judicial, executive and legislative officers. And so it is apparent that in the actual practice of the government the prohibition has been construed as embracing and preventing diminution by taxation. Does the Sixteenth Amendment authorize and support this tax and the attendant diminution; that is to say, does it bring within the taxing powers subjects thereto fore excepted? The court below answered in the negative; and counsel for the government say:

'It is not, in view of recent decisions, contended that this amendment rendered anything taxable as income that was not so taxable before.'

We might rest the matter here, but it seems better that our view and the reasons therefor be stated in this opinion, even if there be some repetition of what recently has been said in other cases.

[5][6] Preliminarily we observe that, unless there be some real conflict between the Sixteenth Amendment and the prohibition, in article 3, section 1, making the compensation of the judges undiminishable, effect must be given to the latter as well as to the former; and also that a purpose to depart from or imperil a constitutional principle so widely esteemed and so vital to our system of government as the independence of the judiciary is not lightly to be assumed.

S. 103, 112, 113, 36 Sup. Ct. 278, 60 L. Ed. 546, and Peck & Co. v. Lowe, 247 U. S. 165, 172, 38 Sup. Ct. 432, 62 L. Ed. 1049, and in Eisner v. Macomber, 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521, decided at the present term, we again held, citing the prior cases, that the amendment 'did not extend the taxing power to new subjects, but merely removed the necessity which otherwise might exist for an apportionment among the states of taxes laid on income.'

After further consideration, we adhere to that view and accordingly hold that the Sixteenth Amendment does not authorize or support the tax in question.

[8] Apart from his salary, a federal judge is as much within the taxing power as other men are. If he has a home or other property, it may be taxed just as if it belonged to another. If he has an income other than his salary, it also may be taxed in the same way. And, speaking generally, his duties and obligations as a citizen are not different from those of his neighbors. But for the common good--to render him, in the words of John Marshall, 'perfectly and completely independent, with nothing to influence or control him but God and his conscience'--his compensation is protected from diminution in any form, whether by a tax or otherwise, and is assured to him in its entirety for his support.

The court below concluded that the compensation was not diminished, and regarded this as inferable from our decisions in Peck & Co. v. Lowe, 247 U. S. 165, 174-175, 38 Sup. Ct. 432, 62 L. Ed. 1049, and United States Glue Co. v. Oak Creek, 247 U. S. 321, 329, 38 Sup. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748. We think neither case tends to support that view. Each related to a business, one to exportation, the other to interstate commerce, which the taxing power--of Congress in one case, of a state in the other-- was restrained from directly burdening; and the holding in both was *264

———————————— (Cite as: 253 U.S. 245, *264, 40 S.Ct. 550, **556) ————————————

that an income tax laid, not on the gross receipts, but on the net proceeds remaining after all expenses were paid and losses adjusted, did not directly burden **557

———————————— (Cite as: 253 U.S. 245, *264, 40 S.Ct. 550, **557) ————————————

the business, but only indirectly and remotely affected it. Here the Constitution expressly forbids diminution of the judge's compensation, meaning, as we have shown, diminution by taxation as well as otherwise. The taxing act directs that the compensation--the full sum, with no deduction for expenses--be included in computing the net income, on which the tax is laid. If the compensation be the only income, the tax falls on it alone; and, if there be other income, the inclusion of the compensation augments the tax accordingly. In either event the compensation suffers a diminution to the extent that it is taxed.

We conclude that the tax was imposed contrary to the constitutional prohibition, and so must be adjudged invalid.

Judgment reversed.


Mr. Justice HOLMES dissenting.

This is an action brought by the plaintiff in error against an acting Collector of Internal Revenue to recover a portion of the income tax paid by the former. The ground of the suit is that the plaintiff is entitled to deduct from the total of his net income six thousand dollars, being the amount of his salary as a judge of the District Court of the United States. The Act of February 24, 1919, c. 18, § 210, 40 Stat. 1057, 1062 (Comp. St. Ann. Supp. 1919, § 6336 1/8 e), taxes the net income of every individual, and section 213, p. 1065, requires the compensation received by the judges of the United States to be included in the gross income from which the net income is to computed. This was done by the plaintiff in error and the tax was paid under protest. He contends that the

requirement mentioned and the tax, to the extent that it was enhanced by consideration of the plaintiff's salary, are *265

———————— (Cite as: 253 U.S. 245, *265, 40 S.Ct. 550, **557) ————————

contrary to article 3, section 1, of the Constitution, which provides that the compensation of the judges shall not be diminished during their continuance in office. Upon demurrer judgment was entered for the defendant, and the case comes here upon the single question of the validity of the abovementioned provisions of the act. The decision below seems to me to have been right for two distinct reasons: that this tax would have been valid under the original Constitution, and that if not so, it was made lawful by the Sixteenth Amendment. In the first place I think that the clause protecting the compensation of the judges has no reference to a case like this. The exemption of salaries from diminution is intended to secure the independence of the judges, on the ground, as it was put by Hamilton in the Federalist (No. 79) that 'a power over a man's subsistence amounts to a power over his will.' That is a very good reason for preventing attempts to deal with a judge's salary as such, but seems to me no reason for exonerating him from the ordinary duties of a citizen, which he shares with all others. To require a man to pay the taxes that all other men have to pay cannot possibly be made an instrument to attack his independence as a judge. I see nothing in the purpose of this clause of the Constitution to indicate that the judges were to be a privileged class, free from bearing their share of the cost of the institutions upon which their well-being if not their life depends.

I see equally little in the letter of the clause to indicate the intent supposed. The tax on net incomes is a tax on the balance of a mutual account in which there always are some and may be many items on both sides. It seems to me that it cannot be affected by an inquiry into the source from which the items more or less remotely are derived. Obviously there is some point at which the immunity of a judge's salary stops, or to put it in the language of the clause, a point at which it could not be said that his compensation *266

———————— (Cite as: 253 U.S. 245, *266, 40 S.Ct. 550, **557) ————————

was diminished by a charge. If he bought a house the fact that a part or the whole of the price had been paid from his compensation as judge would not exempt the house. So if he bought bonds. Yet in such cases the advantages of his salary would be diminished. Even if the house or bonds were bought with other money the same would be true, since the money would not have been free for such an application if he had not used his salary to satisfy other more peremptory needs. At some point, I repeat, money received as salary loses its specific character as such. Money held in trust loses its identity by being mingled with the general funds of the owner. I see no reason why the same should not be true of a salary. But I do not think that the result could be avoided by keeping the salary distinct. I think that the moment the salary is received, whether kept distinct or not, it becomes part of the general income of the owner, and is mingled with the rest, in theory of law, as an item in the mutual account with the United States. I see no greater reason for exempting the recipients while they still have income as income than when they have invested it in a house or bond.

The decisions heretofore reached by this Court seem to me to justify my conclusion. In Peck & Co. v. Lowe, 247 U. S. 165, 38 Sup. Ct. 432, 62 L. Ed. 1049, a tax was levied by Congress upon the income of the plaintiff corporation. More than two-thirds of the income were derived from exports and the Constitution in terms prohibits any tax on articles exported from any state. By construction it had been held to create 'a freedom from any tax which directly burdens the exportation.' Fairbanks v. United States, 181 U. S. 283, 293, 21 Sup. Ct. 648, 652 (45 L. Ed. 862). The prohibition was unequivocal and express, not merely an inference as in the present case. Yet it was held unanimously that the tax was valid. 'It is not laid on income **558

———————————— (Cite as: 253 U.S. 245, *266, 40 S.Ct. 550, **558) ————————————

from exportation * * * in a discriminative way, but just as it is laid on other income. * * * There is no *267

———————————— (Cite as: 253 U.S. 245, *267, 40 S.Ct. 550, **558) ————————————

discrimination. At most, exportation is affected only indirectly and remotely. The tax is levied * * * after the recipient of the income is free to use it as he chooses. Thus what is taxed-- the net income--is as far removed from exportation as are articles intended for export before the exportation begins.' 247 U. S. 174, 175, 38 Sup. Ct. 434, 62 L. Ed. 1049. All this applies with even greater force when, as I have observed, the Constitution has no words that forbid a tax. In United States Glue Co. v. Oak Creek, 247 U. S. 321, 329, 38 Sup. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748, the same principle was affirmed as to interstate commerce and it was said that if there was no discrimination against such commerce the tax constituted one of the ordinary burdens of government from which parties were not exempted because they happened to be engaged in commerce among the States.

A second and independent reason why this tax appears to me valid is that, even if I am wrong as to the scope of the original document, the Sixteenth Amendment justifies the tax, whatever would have been the law before it was applied. By that amendment Congress is given power to 'collect taxes on incomes from whatever source derived.' It is true that it goes on 'without apportionment among the several States, and without regard to any census or enumeration,' and this shows the particular difficulty that led to it. But the only cause of that difficulty was an attempt to trace income to its source, and it seems to me that the Amendment was intended to put an end to the cause and not merely to obviate a single result. I do not see how judges can claim an abatement of their income tax on the ground that an item in their gross income is salary, when the power is given expressly to tax incomes from whatever source derived.

Mr. Justice BRANDEIS concurs in this opinion.
U.S. 1920
EVANS v. GORE
253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887, 11 A.L.R. 519, 1 USTC P 36, 3 A.F.T.R. 3078
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

———————————— (Cite as: 268 U.S. 501, 45 S.Ct. 601) ————————————

268 U.S. 501, 45 S.Ct. 601, 69 L.Ed. 1067, 1 USTC P 138, 5 A.F.T.R. 5396

Supreme Court of the United States

MILES

v.

GRAHAM.

No. 53.

Argued March 16, 1925.

Decided June 1, 1925.

In Error to the District Court of the United States for the District of Maryland.
Action by Joshua W. Miles, formerly United States Collector of Internal Revenue for the
District of Maryland, against Samuel J. Graham. Defendant's demurrer to the declaration
was overruled by District Court (284 F. 878), and defendant brings error. Affirmed.

West Headnotes

KeyCite Notes 

▭227 Judges
    ▭227III Rights, Powers, Duties, and Liabilities
        ▭227k22 Compensation and Fees
            ▭227k22(7) k. Change in Amount During Term of Office. Most Cited Cases

Provision of Revenue Act taxing federal judges' salaries held void.
**601

———————————— (Cite as: 268 U.S. 501, 45 S.Ct. 601, **601) ————————————

*502

———————————— (Cite as: 268 U.S. 501, *502, 45 S.Ct. 601, **601) ————————————

Mr. James M. Beck, Sol. Gen., of Washington, D. C., and The Attorney General, for
plaintiff in error.
Messrs. Wm. L. Marbury and Wm. L. Rawls, both of Baltimore, Md., for defendant in
error.

*505

———————————— (Cite as: 268 U.S. 501, *505, 45 S.Ct. 601, **601) ————————————

Mr. Justice McREYNOLDS delivered the opinion of the Court.
The defendant in error is a judge of the Court of Claims. He assumed the duties of that
office September 1, 1919, when the statute (Act Feb. 25, 1919, c. 29, 40 Stat. 1156
1157) declared that judges of that court should be entitled to receive 'an annual salary
of $7,500, payable monthly from the treasury.' He was required to pay to plaintiff in
error, Collector of Internal Revenue, the income taxes for 1919 and 1920 prescribed by

'An act to provide revenue, and for other purposes,' approved February 24, 1919 [the Revenue Act of 1918] c. 18, 40 Stat. 1057. In computing these his judicial salary was treated as part of his 'gross income.'

'Sec. 213. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'----

'(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (*including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States*, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, *the compensation received as such*), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; *506

———————————— (Cite as: 268 U.S. 501, *506, 45 S.Ct. 601, **601) ——————————

also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *' Comp. St. Ann. Supp. 1919, § 6336 1/8 ff.

After payment and the necessary preliminary steps, he instituted this proceeding to recover, upon the ground that the exactions on account of his salary were without authority of law. Judgment went for him in the trial court. It was there said:

'Unless he was taxable under the [Revenue] Act of 1918 [approved February 24, 1919] he was not taxable at all. If he is taxable under the statute, he is so by virtue of a clause which applies to all the federal judges, irrespective of the time they came upon the bench. That clause as written has been held invalid. * * * When the clause which has been declared invalid is out of the act, no other imposes the tax. What the court here is asked to do is to rewrite the pertinent portion of the statute in question so that it will read as did the provisions of the Acts of 1913 and 1916 relative to this general subject. But that would be for the court to do what Congress expressly decided not to do. With its eyes wide open to the possible consequences, it made up its mind to seek uniformity by imposing the tax upon all judges. Whether it would or would not have been willing to tax the minority, if the majority were immune, nobody knows, perhaps not even the members of that Congress itself, for upon that question they never were called upon to make up their minds.'

Plaintiff in error now insists that, although the challenged provision of the Act of February 24, 1919, has been adjudged invalid as to all judges who took office prior to that date, it is obligatory upon those thereafter appointed.

Section 1, art. 3, of the Constitution provides:

'The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts *507

———————————— (Cite as: 268 U.S. 501, *507, 45 S.Ct. 601, **601) ——————————

as the Congress may from time to time ordain and establish. The judges, **602

———————————— (Cite as: 268 U.S. 501, *507, 45 S.Ct. 601, **602) ——————————

both of the supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office.'

Evans v. Gore, 253 U. S. 245, 40 S. Ct. 550, 64 L. Ed. 887, 11 A. L. R. 519, arose out of the claim that Judge Evans was liable for the tax upon his salary as prescribed by the act now under consideration, although appointed before its enactment. We there gave much consideration to the purpose, history, and meaning of the above-quoted section of the Constitution and, among other things, said:

'These considerations make it very plain, as we think, that the primary purpose of the prohibition against diminution was not to benefit the judges, but like the clause in respect of tenure, to attract good and competent men to the bench and to promote that independence of action and judgment which is essential to the maintenance of the guaranties, limitations, and pervading principles of the Constitution and to the administration of justice without respect to persons and with equal concern for the poor and the rich. Such being its purpose, it is to be construed, not as a private grant, but as a limitation imposed in the public interest; in other words, not restrictively, but in accord with its spirit and the principle on which it proceeds.

'Obviously, diminution may be effected in more ways than one. Some may be direct and others indirect, or even evasive as Mr. Hamilton suggested. But all which by their necessary operation and effect withhold or take from the judge a part of that which has been promised by law for his services must be regarded as within the prohibition. * * *

'The prohibition is general, contains no excepting words, and appears to be directed against all diminution, *508

───────────── (Cite as: 268 U.S. 501, *508, 45 S.Ct. 601, **602) ─────────────

whether for one purpose or another; and the reasons for its adoption, as publicly assigned at the time and commonly accepted ever since, make with impelling force for the conclusion that the fathers of the Constitution intended to prohibit diminution by taxation as well as otherwise--that they regarded the independence of the judges as of far greater importance than any revenue that could come from taxing their salaries. * * *

'For the common good--to render him [the judge], in the words of John Marshall, 'perfectly and completely independent, with nothing to influence or control him but God and his conscience'--his compensation is protected from diminution in any form, whether by a tax or otherwise, and is assured to him in its entirety for his support. * * *

'Here the Constitution expressly forbids diminution of the judge's compensation, meaning, as we have shown, diminution by taxation as well as otherwise. The taxing act directs that the compensation--the full sum, with no deduction for expenses--be included in computing the net income, on which the tax is laid. If the compensation be the only income, the tax falls on it alone; and, if there be other income, the inclusion of the compensation augments the tax accordingly. In either event the compensation suffers a diminution to the extent that it is taxed.

'We conclude that the tax was imposed contrary to the constitutional prohibition, and so must be adjudged invalid.'

Does the circumstance that defendant in error's appointment came after the taxing act require a different view concerning his right to exemption? The answer depends upon the import of the word 'compensation' in the constitutional provision.

The words and history of the clause indicate that the purpose was to impose upon Congress the duty definitely to declare what sum shall be received by each judge out *509

───────────── (Cite as: 268 U.S. 501, *509, 45 S.Ct. 601, **602) ─────────────

of the public funds and the times for payment. When this duty has been complied with, the amount specified become the compensation which is protected against diminution during his continuance in office.

On September 1, 1919, the applicable statute declared:

'The Chief Justice [of the Court of Claims] shall be entitled to receive an annual salary of $8,000, and each of the other judges an annual salary of $7,500, payable monthly.' Comp. St. Ann. Supp. 1919, § 1127.

The compensation fixed by law when defendant in error assumed his official duties was $7,500 per annum, and to exact a tax in respect of this would diminish it within the plain rule of Evans v. Gore.

The taxing act became a law prior to the statute prescribing salaries for judges of the Court of Claims, but if the dates were reversed it would be impossible to construe the former as an amendment which reduced salaries by the amount of the tax imposed. No judge is required to pay a definite percentage of his salary, but all are commanded to return, as a part of 'gross income,' 'the compensation received as such' from the United States. From the 'gross income' various deductions and credits are allowed, as for interest paid, contributions or gifts made, personal exemptions varying with family relations, etc., and upon the net result assessment is made. The plain purpose was to require all judges to return their compensation as an item of 'gross income,' and to tax this as other salaries. This is forbidden by the Constitution.

The power of Congress definitely to fix the compensation to be received at stated intervals by judges thereafter appointed is clear. It is equally clear, we think, that there is no power to tax a judge of a court of the United States on account of the salary prescribed for him by law.

The judgment of the court below is affirmed.

Mr. Justice BRANDEIS dissents.
U.S. 1925
MILES v. GRAHAM
268 U.S. 501, 45 S.Ct. 601, 69 L.Ed. 1067, 1 USTC P 138, 5 A.F.T.R. 5396
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.